ROSENBERG DEVELOPMENT CORPORATION, Appellant

v.

IMPERIAL PERFORMING ARTS, INC., Appellee

NO. 14-16-00978-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed July 6, 2017

George E. Hyde, Scott M. Tschirhart, Cynthia Trevino, Austin, TX, for Appellant.

James J. Burnett, Stafford, TX, Douglas Koger, Sugarland, TX, for Appellee.

Panel consists of Justices Christopher, Busby, and Jewell.

## OPINION

Kevin Jewell, Justice

In this interlocutory appeal, an economic development corporation created by the City of Rosenberg contends that the trial court erred in partially denying its plea to the jurisdiction. Asserting entitlement to governmental immunity from suit, the corporation, Rosenberg Development Corporation, contends that the plaintiff, Imperial Performing Arts, Inc., failed to establish a valid waiver of governmental immunity and the trial court erred in denying its plea. We conclude, however, that the corporation does not enjoy governmental immunity from suit on these facts, and thus the plaintiff was not required to establish a waiver of immunity. Accordingly, we affirm the trial court's partial denial of the corporation's plea to the jurisdiction.

## Background

The Development Corporation Act of 1979 (the "Act") authorizes certain municipalities to organize economic development corporations for, inter alia, "the promotion and development of new and expanded business enterprises to provide and encourage employment and the public welfare." Tex. Loc. Gov't Code § 501.004(a)(6). Appellant, Rosenberg Development Corporation ("RDC"), is an economic development corporation organized under the Act by the City of Rosenberg. According to RDC's articles of incorporation, it exists "exclusively for the purposes of ... promoting, assisting[,] and enhancing economic and industrial development activities ... and ... promot[ing] or develop[ing] new or expanded business enterprises, including public facilities."

In March 2012, RDC entered into a Performance Agreement with Imperial Performing Arts, Inc. ("IPA"), a nonprofit organization that promotes and produces performance and visual arts. Under the Performance Agreement, RDC agreed to pay IPA $500,000 in two installments. In exchange, IPA purportedly would lease, renovate, and operate both an "Arts Center" and the historic Cole Theater in downtown Rosenberg (though IPA contends that the contract obligated IPA only to arrange to renovate and open the Cole Theater).

After IPA began renovating the building that would house the Arts Center, IPA realized the conversion would be more time-consuming and expensive than IPA allegedly had been led to believe. In September 2012, IPA requested a forty-five day extension from RDC; RDC's board of directors voted to give IPA a sixty day extension. IPA eventually finished the conversion and opened the Arts Center in November 2012. Since then, IPA has continuously occupied the Arts Center.

Meanwhile, IPA also began prep work on the planned renovation of the Cole Theater, but realized that the theater project, like the Arts Center, would be more extensive and costly than initially envisioned. IPA alleges that an engineering and construction company declined to serve as the project's general contractor, telling IPA that the theater was so deteriorated that any "renovation" would effectively require complete rebuilding.

According to IPA, by November 2013 it became obvious that the original plan to renovate and reopen the Cole Theater was not feasible. At a meeting between IPA's and RDC's respective boards of directors, one of RDC's directors allegedly projected that renovating the Cole Theater would cost between three and five million dollars and would take up to five years. This estimate was greater, as to both timing and cost, than any information previously available to IPA and, if accurate, IPA contends, impaired or prevented IPA's ability to accomplish the Performance Agreement's objectives.

In February 2014, IPA told RDC's board of directors that IPA could not renovate and open the Cole Theater by December 2014 as planned. IPA asked for an extension and also asked to discuss amending the Performance Agreement to allow IPA to move to an alternate venue or build its own facility. In April 2014, IPA again asked for an extension and to amend the Performance Agreement.

RDC allegedly refused to amend the Performance Agreement or to grant IPA an extension for the Cole Theater project. IPA stopped progress on the Cole Theater project in June 2014.

IPA then sued RDC for, as relevant here, breach of contract by unreasonably failing to grant an extension of the Performance Agreement. IPA also sought a judgment declaring that the Performance Agreement constitutes an absolute grant to IPA of the funds provided by RDC.[1]

RDC filed a counterclaim for breach of contract and declaratory judgment that IPA breached the Performance Agreement. RDC also filed a plea to the jurisdiction regarding IPA's claims for damages. In its plea, RDC argued that: (1) IPA's alleged damages are consequential dam-

---

1. The procedural posture is somewhat complicated. IPA initially sued RDC and some RDC directors. IPA later non-suited its claims against RDC. RDC, on the same day as IPA's non-suit, filed counterclaims against IPA (or asserted claims as an intervening counter-plaintiff). IPA then re-asserted its previously non-suited claims (or counterclaims) against RDC. For purposes of this appeal, IPA is the plaintiff and RDC is the defendant.

ages, which IPA cannot recover in a suit against a local governmental entity under Local Government Code section 271.153; (2) RDC is immune from liability for IPA's damages claims under Local Government Code section 505.106 as to its performance of governmental functions; (3) RDC did not waive its immunity from suit by asserting claims against IPA because RDC's claims were more akin to recovering a civil penalty and were not in the nature of a damages claim; and (4) IPA failed to plead a valid legislative waiver of governmental immunity for its breach of contract claim.

The trial court granted RDC's plea as to IPA's claim that RDC breached the Performance Agreement by refusing to discuss an extension under the contract and by refusing to give IPA a reason for the refusal to grant an extension. The trial court denied the plea as to IPA's claim that RDC breached the Performance Agreement by unreasonably refusing to grant an extension; denied the plea as to IPA's claim for declaratory judgment; and denied the plea by rejecting RDC's arguments that IPA's damages claims for breach of contract are barred by Local Government Code sections 271.153 and 505.106.

RDC filed a notice of interlocutory appeal. On appeal, RDC challenges the portions of the trial court's order denying its plea to the jurisdiction.

## Analysis

### A. Appellate Jurisdiction

 We first address our jurisdiction over this interlocutory appeal. Though IPA has not challenged RDC's right to appeal the challenged order interlocutorily, we examine our appellate jurisdiction independently and sua sponte. *See SJ Med. Ctr., L.L.C. v. Estahbanati*, 418 S.W.3d 867, 870 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Generally, our appellate jurisdiction is confined to appeals of final judgments. *See Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The legislature, however, has specified circumstances in which a litigant may appeal immediately from an otherwise unappealable order because a final judgment has not been rendered. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a). RDC relies on one of these provisions, which allows a litigant to appeal from a trial court's interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Texas Civil Practice and Remedies Code section 101.001. *See id.* § 51.014(a)(8).

RDC filed a plea to the jurisdiction, which the trial court partially denied. A threshold issue for this court to resolve is whether RDC is a "governmental unit," as that term is defined in the Texas Civil Practice and Remedies Code. If RDC is a "governmental unit," we have jurisdiction over its interlocutory appeal. *See id.*

Under the relevant portion of the Texas Civil Practice and Remedies Code, a "governmental unit" is:

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation dis-

trict, communication district, public health district, and river authority;

(C) an emergency service organization; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3).

The first three subsections are inapplicable. RDC is neither an agency nor a political subdivision of the state, and RDC is not an emergency service organization. Thus, the issue is whether RDC qualifies as a "governmental unit" under subsection (D). To meet subsection (D)'s requirements, the entity claiming governmental unit status must (1) be an "institution, agency, or organ of government" and (2) derive its "status and authority" as such from "laws passed by the Legislature." *Id.*; *see also Univ. of the Incarnate Word v. Redus*, No. 15-0732, 518 S.W.3d 905, 909, 2017 WL 1968030, at *4 (Tex. May 12, 2017); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 75-78 (Tex. 2011).

In determining the status and authority of RDC, an economic development corporation, we first note that such entities would not exist but for legislative enactment. Tex. Loc. Gov't Code §§ 501.011, 501.051. As a creature of statute, the legislature has defined RDC's status and authority. For example, RDC has all powers incidental to or necessary for the performance of its statutory authority to sue and be sued with respect to a project; to adopt and amend bylaws for the corporation's affairs; to lease or sell all or any part of a project; to donate or convey property to an institute of higher education; to make a secured or unsecured loan to finance all or part of the cost of a project; and to issue, sell, or exchange bonds. *Id.* § 501.054(b)

(citing the powers created and circumscribed by sections 501.059, 501.060, 501.064, 501.153-.155, 501.159, 501.201(a), 501.208, 501.209, 501.214, and 501.402).

Further, as one of our sister courts of appeals has observed, an economic development corporation's powers, privileges, and functions are "created and circumscribed by statute." *City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 40 (Tex. App.—San Antonio 2013, no pet.) (op. on reh'g) (citing provisions in the Development Corporation Act); *compare with San Antonio Water Sys. v. Smith*, 451 S.W.3d 442, 450-51 (Tex. App.—San Antonio 2014, no pet.) (municipal water systems are created by city ordinance, and thus do not derive status and authority from laws passed by the legislature). We agree. The status and authority of an economic development corporation like RDC clearly are derived from laws passed by the legislature. *See Incarnate Word*, 518 S.W.3d at 909–10, 2017 WL 1968030, at *4.

The next question is whether RDC is an "institution, agency, or organ of government," as contemplated by the Act. The Supreme Court of Texas recently interpreted this language and concluded that an "organ of government" is an "entity that operates as part of a larger governmental system." *Id.* We look to the Supreme Court's recent case law in analyzing whether certain "indicators of governmental-unit status" are present here. *See id.* at 909–10, 2017 WL 1968030, at *4-5 (analyzing whether private universities with police departments are "governmental units"); *LTTS Charter Sch.*, 342 S.W.3d at 77-78 (analyzing whether open-enrollment charter schools are "governmental units").

Some indicators discussed in *Incarnate Word* and *LTTS Charter School* exist here as well. For example, economic development corporations are subject to the Government Code's regulation of open meet-

ings and access to public information; in fact, economic development corporations are subject to additional requirements. *See Incarnate Word*, 518 S.W.3d at 910–11, 2017 WL 1968030, at *5; *LTTS Charter Sch.*, 342 S.W.3d at 78; Tex. Loc. Gov't Code § 501.072 (corporation's board of directors is subject to open meetings law and the public information law); Tex. Gov't Code § 551.056(b), (c) ("Additional posting requirements for certain . . . development corporations": economic development corporations must also post notice of a meeting and the agenda on the corporation's Internet website). Also, economic development corporations derive their funding from public sources—specifically, revenue bonds and municipal sales and use taxes. *See LTTS Charter Sch.*, 342 S.W.3d at 77; Tex. Loc. Gov't Code §§ 501.006 (corporation may use bonds to finance cost of projects), 505.302 (corporation may be entitled to a percentage of the municipality's sales and use tax to finance cost of projects).

Charter schools must follow the same state-promulgated rules their public counterparts follow. *LTTS Charter Sch.*, 342 S.W.3d at 78. Similarly, economic development corporations are bound by certain state-promulgated standards. For instance, economic development corporations are subject to rules regarding loans obtained from the Texas Leverage Fund, and rules regarding local sales and use taxes. *See* 10 Tex. Admin. Code § 181.1; 34 Tex. Admin. Code § 3.334. *But see LTTS Charter Sch.*, 342 S.W.3d at 78 (noting that a charter school is considered a governmental entity, political subdivision, and local government for certain purposes of the Government Code; as discussed more below, an economic development corporation is none of these things).

Other sections of the Act support a conclusion that economic development corpo-

rations are "agencies" or "organs" of government. Most particularly, municipalities create, supervise, and may terminate economic development corporations. Tex. Loc. Gov't Code § 501.051 (corporation "acts on behalf of" authorizing unit); § 501.054(b)(2) (corporation "subject to the control of" the authorizing unit); § 501.073 (authorizing unit will "approve all programs" and "review any financial statements" of corporation); § 501.062 (corporation's board of directors appointed by authorizing unit); § 501.064 (corporation's bylaws must be approved by authorizing unit); § 501.401 (authorizing unit may terminate corporation). And, though the legislature has not granted economic development corporations immunity from suit or liability generally, as it did charter schools, the legislature has granted immunity from suit for certain tort claims and granted immunity from liability for certain non-tort claims. *See Incarnate Word*, 518 S.W.3d at 910–11, 2017 WL 1968030, at *5 (discussing charter schools); Tex. Loc. Gov't Code § 505.106 (statutory grant of immunity for certain claims).

Still, the indicators of governmental-unit status present in *LTTS Charter School* and *Incarnate Word* "do not precisely match those present here." *Incarnate Word*, 518 S.W.3d at 910, 2017 WL 1968030, at *5. Unlike charter schools, which have all of the powers and privileges of public schools, economic development corporations do not have the powers and privileges of any governmental counterpart; rather, the corporations have the powers and privileges of nonprofit corporations. *See LTTS Charter Sch.*, 342 S.W.3d at 77; Tex. Loc. Gov't Code § 501.054(a). Moreover, the legislature's intended role for economic development corporations in a statewide system is "less clear than its express inclusion of open-enrollment charter schools in the public-school system."

*Incarnate Word*, 518 S.W.3d at 910, 2017 WL 1968030, at *5.

On balance, we agree that an economic development corporation like RDC is an "entity that operates as part of a larger governmental system," given the legislature's overall statutory scheme regarding the purpose and regulation of economic development corporations under the Local Government Code, that the corporations derive their existence from political subdivisions of the state, that the corporations derive their funding from public sources, and that the legislature has, at least in part, granted certain forms of immunity to them. *Id.* at 910, 2017 WL 1968030, at *4. Accordingly, we conclude that an economic development corporation created under the Act is an "institution, agency, or organ of government" and therefore hold that RDC is a governmental unit, as that term is defined in Texas Civil Practice and Remedies Code section 101.001(3)(D). RDC is therefore entitled to pursue an interlocutory appeal under section 51.014(a)(8) of the code, and we possess appellate jurisdiction. *See Little*, 422 S.W.3d at 41.

**B. Is RDC immune from suit?**

■ RDC raises four issues on appeal, each of which is premised on the notion that it is entitled to assert governmental immunity from suit. RDC does not brief why that is so, and IPA does not take issue with RDC's presumption. Nonetheless, whether RDC may ·assert immunity from suit in the first instance is an issue implicating jurisdiction so we address it sua sponte.[2]

■ RDC's appellate arguments presume it is entitled to governmental immunity from suit. Though we have determined RDC falls within the "broad definition" of governmental unit for purposes of this interlocutory appeal,[3] it does not necessarily follow that RDC enjoys governmental immunity from suit. *See Incarnate Word*, 518 S.W.3d at 911, 2017 WL 1968030, at *5 (recognizing that the issues of governmental-unit status and immunity are separate inquiries). As immunity is a common law creation, "[i]t remains the judiciary's responsibility . . . to determine under what circumstances sovereign [or governmental] immunity exists in the first instance"[4] and to "delineat[e] its boundaries." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 435 (Tex. 2016). Here, "the question is not one of waiver, but of the existence of immunity in the first instance." *City of Galveston*, 217 S.W.3d at 471. In performing its duty, a court considers the reach of each type of immunity and the purposes behind immunity in the first instance. *See Incarnate Word*, 518 S.W.3d at 911, 2017 WL 1968030, at *5 ("To determine whether an entity is immune, courts should rely

---

2. Then-Justice Hecht has noted "important differences" between immunity from suit and subject-matter jurisdiction: for example, "[w]hile a court is obliged to examine its subject-matter jurisdiction on its own in every case, we have never suggested that a court should raise immunity on its own whenever the government is sued." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 102 (Tex. 2012) (Hecht, J., concurring); *see also Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 751 (Tex. 2017). Our examination of whether RDC enjoys governmental immunity from suit in the first instance does not implicate Justice

Hecht's concern in *Rusk*. Our court is not "rais[ing] immunity on its own"; rather, we are evaluating whether an immunity argument raised by RDC is in law one available to it.

3. *See LTTS Charter Sch.*, 342 S.W.3d at 76 (section 101.001(3)(D) is a category with a "broad definition" of "governmental unit").

4. *City of Galveston v. State*, 217 S.W.3d 466, 471 (Tex. 2007).

not· on the Tort Claims Act's ·definition of governmental unit ... but on the 'nature and purposes' of sovereign immunity.") (quoting *Wasson*, 489 S.W.3d at 432).

We first consider whether RDC enjoys common law immunity from suit. If we conclude it does not enjoy common law immunity, then we consider whether the legislature has granted RDC statutory immunity from suit. *Little*, 422 S.W.3d at 42.

### 1. The common law doctrines of governmental and sovereign immunity

■■■ While often used interchangeably, sovereign immunity and governmental immunity involve two distinct concepts. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). Sovereign immunity refers to the state's immunity from suit and liability. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). In addition to protecting the state from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. *Id.* Governmental immunity, on the other hand, protects political subdivisions of the state, including counties, cities, and school districts, when they perform governmental functions. *Id.*; *City of Galveston*, 217 S.W.3d at 469. Though sovereign and governmental immunity are related common law concepts, they differ in scope and protect distinct entities. *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 58; *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./*

*Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 n.2 (Tex. 2006).[5]

■■■ Two concepts of immunity have persisted in Texas jurisprudence: immunity from suit and immunity from liability. Immunity from suit bars an action against the state and its political subdivisions unless the legislature expressly consents to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). If a government defendant is immune from suit, the trial court has no subject-matter jurisdiction to hear the case against it, and the defendant may properly challenge the suit in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007).

■■■ A narrower form of protection than immunity from suit, immunity from liability protects the state and its political subdivisions from judgment even if the legislature has expressly consented to the suit. *Jones*, 8 S.W.3d at 638; *accord Wichita Falls State Hosp.*, 106 S.W.3d at 696. Immunity from liability acts like an affirmative defense; it must be pled and it does not deprive the trial court of subject-matter jurisdiction. *Jones*, 8 S.W.3d at 638; *see also Miranda*, 133 S.W.3d at 224.

We turn now to the nature of RDC and then examine whether its character aligns with the fundamental purposes of common law immunity.

---

**5.** Courts have long recognized a distinction between agencies of the state, which generally exercise statewide jurisdiction, and political subdivisions, which have limited geographic jurisdiction. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 643 (Tex. 2004); *see also Guaranty Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980) ("A political subdivision differs from a[n] ... agency of the State. A political subdivision has jurisdiction over a portion of the State; a[n] ... agency of the State exercises its jurisdiction throughout the State.... [T]he legislature has consistently recognized these distinctions between ... agencies on the one hand and political subdivisions on the other.").

### 2. Economic development corporations generally

The legislature enacted the Development Corporation Act after finding that "communities in this state have been at a critical disadvantage in competing with communities in other states for the location or expansion of business enterprises because of the availability and prevalent use in all other states of financing and other special incentives." Tex. Loc. Gov't Code § 501.004(a)(6); *see generally* Act of May 23, 1979, 66th Leg., R.S., ch. 700, §§ 1–38, 1979 Tex. Gen. Laws 1675, 1675-91 (codified at Tex. Rev. Civ. Stat. art. 5190.6), *repealed by* Act of May 15, 2007, 80th Leg., R.S., ch. 885, § 3.78, 2007 Tex. Gen. Laws 1905, 2163 (re-codifying art. 5190.6 at Tex. Loc. Gov't Code §§ 501.001 *et seq.*). Accordingly, the Act permits an authorizing unit—certain municipalities, counties, or districts—to authorize the creation of one or more corporations for a specific public purpose. Tex. Loc. Gov't Code §§ 501.051(c), 501.056(4). The specified public purpose of a corporation must be limited to the promotion and development of enterprises to promote and encourage employment and the public welfare. *Id.* § 501.051(c).

The City of Rosenberg is the "authorizing municipality," or the unit that authorized RDC's creation. *Id.* §§ 501.002(1), 505.001. RDC is a Type B corporation under the Act. *Id.* § 505.001.[6] Type B corporations may use a percentage of a sales and use tax imposed by the municipality, or may use the proceeds from revenue bonds, to pay the costs of specific projects authorized under the Act. *Id.* §§ 505.251, 505.302. All economic development corporations are authorized to undertake projects related to, *inter alia*, creating or retaining primary jobs, job training, and improving infrastructure. *Id.* §§ 501.101–.103. Type B corporations may also undertake projects related to, *inter alia*, recreational or community facilities, affordable housing, water supply facilities and water conservation programs, and airport facilities. *Id.* §§ 505.152–.154, 505.1561.

All economic development corporations are nonprofit under the Act. *Id.* § 501.053(a). They have the "powers, privileges, and functions of a nonprofit corporation ... formed under the Texas Nonprofit Corporation Law." *Id.* § 501.054(a); *see also generally* Tex. Bus. Org. Code ch. 22 ("Nonprofit Corporations"). An economic development corporation also has all powers incidental to or necessary for the performance of its statutory authority to sue and be sued with respect to a project undertaken by the corporation, to adopt and amend bylaws for the corporation's affairs, to lease or sell all or any part of a project, to donate or convey property to an institute of higher education, to make a secured or unsecured loan to finance all or part of the cost of a project, and to issue, sell, or exchange bonds. Tex. Loc. Gov't Code § 501.054(b) (citing the powers created and circumscribed by sections 501.059, 501.060, 501.064, 501.153–.155, 501.159, 501.201(a), 501.208, 501.209, 501.214, and 501.402).

An economic development corporation is "a constituted authority and an instrumentality," as defined under the Internal Rev-

---

**6.** Certain municipalities that have a population greater than 400,000 or are located in a county with a population greater than 500,000 may authorize the creation of a Type B corporation. Tex. Loc. Gov't Code § 505.002. In contrast, Type A corporations are organized by certain municipalities that have a population of less than 50,000 or are located in a county with a population of 500,000 or less. *Id.* § 504.002. A municipality that could create a Type A corporation may also

enue Code, and may act on behalf of the authorizing unit for the specific public purpose authorized by the unit. *Id.* § 501.055(a). An economic development corporation, however, is not a political subdivision or a political corporation for purposes of the laws of this state. *Id.* § 501.055(b).

 The Act, read as a whole, does not reflect legislative intent to grant economic development corporations "powers of government," nor do the corporations perform traditional governmental functions or engage in traditional governmental activities. *Cf. Ben Bolt*, 212 S.W.3d at 325; *Harris Cty. Flood Control Dist. v. Mann*, 135 Tex. 239, 140 S.W.2d 1098, 1101 (1940) (flood-control district "shall exist and function as a governmental agency and a body politic and corporate, separate, independent, and distinct within itself"). While the corporations are publicly funded, they are, in essence, nonprofit corporations that undertake discrete projects for the benefit of their authorizing units or the citizens residing within the unit's geographic boundaries. Economic development corporations are not "distinct governmental entit[ies]." *Cf. Ben Bolt*, 212 S.W.3d at 326.

3. *Purposes of immunity under common law*

 We are mindful of the "nature and purposes" underlying the common law doctrine of immunity. *Incarnate Word*, 518 S.W.3d at 911, 2017 WL 1968030, at *5. As the Supreme Court of Texas has pointed out on numerous occasions, the doctrine of immunity for governmental entities is inherently connected to the public fisc and preserves separation-of-powers principles by preventing the judiciary from interfer-

ing with the legislature's prerogative to allocate tax dollars. *See Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015); *see also Rusk State Hosp.*, 392 S.W.3d at 97 (noting that immunity respects "the relationship between the legislative and judicial branches of government"); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002) (plurality op.); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 414 (Tex. 1997) (Hecht, J., concurring) (outlining modern political and financial justifications for sovereign immunity).

 "[I]mmunity thus protects the public as a whole by preventing potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation." *Brown & Gay Eng'g*, 461 S.W.3d at 121; *see also Tooke*, 197 S.W.3d at 332 (an important purpose of immunity is pragmatic: "to shield the public from the costs and consequences of improvident actions of their governments"). Relatedly, immunity protects the government "from the distraction and expenses that would ensue if citizens could sue the government whenever they pleased." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 382 (Tex. 2006) (Brister, J., concurring).

4. *Is RDC entitled to immunity under the common law?*

 As discussed above, a defendant may be protected by the related, though distinct, common law doctrines of sovereign or governmental immunity. *See Wichita Falls State Hosp.*, 106 S.W.3d at 694 n.3. RDC does not enjoy sovereign immunity because it is not an agency of the state. *Id.*[7] Moreover, the legislature

---

create a Type B corporation. *Id.* §§ 505.002(3), 505.003.

7. Even if the City of Rosenberg, as RDC's authorizing unit, enjoyed sovereign immunity (which it, as a political subdivision of the state, does not, *see Wichita Falls State Hosp.*, 106 S.W.3d at 694 n.3), the Act makes clear that "[a] unit may not delegate to a corporation any of the unit's attributes of sovereignty." Tex. Loc. Gov't Code § 501.010. "[A]ttrib-

knows when and how to designate an entity as a "state agency for certain purposes." *See, e.g., Klein v. Hernandez*, 315 S.W.3d 1, 8 (Tex. 2010) (holding that Chapter 312 of the Texas Health and Safety Code made Baylor College of Medicine—a private, nonprofit medical school—a state agency for certain purposes) (discussing Tex. Health & Safety Code § 312.007(a) ("A medical and dental unit, supported medical or dental school, or coordinating entity is a state agency . . . .")). The Act does not designate economic development corporations as state agencies, and we decline to consider them as such here.

 But is RDC entitled to governmental immunity, as courts have defined the boundaries of that common law doctrine? We hold that it is not. Governmental immunity protects political subdivisions of the state from suit and liability. *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 57-58; *Wichita Falls State Hosp.*, 106 S.W.3d at 694 n.3. Political subdivisions of the state include counties, cities, and school districts. *Wichita Falls State Hosp.*, 106 S.W.3d at 694 n.3. Under the Act, however, an economic development corporation like RDC "is not a political subdivision . . . for purposes of the laws of this state." Tex. Loc. Gov't Code § 501.055(b). Thus, the protection of governmental immunity does not extend to economic development corporations.

Our analysis is guided by court decisions analyzing whether certain entities are entitled to governmental immunity even though they are not agencies or political subdivisions of the state. In *Ben Bolt*, the court considered whether a self-insurance fund whose membership comprised of local political subdivisions enjoys governmental immunity. *Ben Bolt*, 212 S.W.3d at 322.

After reviewing the purposes of immunity, the nature of the fund, and noting that self-insurance is a function of local governments, the court concluded that the fund's "nature, purposes[,] and powers" demonstrate legislative intent that it "exist as a distinct governmental entity entitled to assert immunity in its own right for the performance of a governmental function." *Id.* at 325-26. Similarly, our sister court of appeals, in discussing a waiver of immunity, determined that a county sports authority was protected from suit by governmental immunity. *See Nat'l Pub. Fin. Guarantee Corp. v. Harris Cty.-Houston Sports Auth.*, 448 S.W.3d 472, 475 (Tex. App.—Houston [1st Dist.] 2014, no pet.). There, the court noted that the sports authority was created by a municipality and the legislature expressly provided that the authority, as a venue district authorized by statute, was a political subdivision of the state. *See id.* (citing Tex. Loc. Gov't Code § 335.023) (a venue district is a political subdivision of the creating political subdivision and of the state).

In contrast, courts have denied governmental immunity to certain private companies despite those entities' significant ties to local governmental units. For instance, in *Campbell v. Texas Employers' Insurance Association*, 920 S.W.2d 323 (Tex. App.—Houston [1st Dist.] 1995, no writ), the court reasoned that insurance carriers, which provided workers' compensation for a school district, were not entitled to governmental immunity because the carriers were "neither an agent nor an employee of the state." *Id.* at 330. Rather, the carriers were simply private companies under contract to provide specific services to the members of the insurance fund. *Id.; see also GAB Bus. Servs., Inc. v. Moore*, 829

---

utes of sovereignty" include eminent-domain power, police power, and the power to tax. *Id.* Immunity from suit is also an inherent attrib-

ute of sovereignty. *City of Galveston*, 217 S.W.3d at 477.

S.W.2d 345, 351 (Tex. App.—Texarkana 1992, no writ) (private company not entitled to governmental immunity when it was not performing uniquely governmental duties but rather acted as an adjuster for a private insurance company).

Economic development corporations like RDC fall somewhere between these ends of the spectrum. Given the Act's scheme and the degree of control an authorizing governmental unit exerts over the existence, activities, and funding of economic development corporations, such corporations have a near-governmental character that transcends the arm's-length contracting relationship at issue in *Campbell* and *GAB*. *Cf. Campbell*, 920 S.W.2d at 330; *GAB*, 829 S.W.2d at 351. Under the Act, however, RDC and the City of Rosenberg are not contracting parties. Furthermore, economic development corporations are not comparable to the entities in *Ben Bolt* or *Harris County-Houston Sports Authority* because, most significantly, the legislature has specifically denied them political subdivision status. Tex. Loc. Gov't Code § 501.055(b); *cf. Houston Sports Auth.*, 448 S.W.3d at 475. This is a critical and material distinction. Accordingly, we conclude that the Act does not demonstrate that economic development corporations exist as distinct governmental entities performing governmental functions. *Cf. Ben Bolt*, 212 S.W.3d at 325-26.

Considering the nature of economic development corporations and the fundamental purposes of governmental immunity, we hold that RDC is not entitled to the protections of common law governmental immunity from suit. The concerns discussed by Texas Supreme Court precedent above are less pressing here, and thus immunity less necessary. *See, e.g., Brown & Gay Eng'g*, 461 S.W.3d at 121; *Rusk State Hosp.*, 392 S.W.3d at 97; *IT-Davy*, 74 S.W.3d at 853-54. Economic development

corporations are formed for specific, undoubtedly laudable purposes, but they do not perform, nor are they responsible for, "key government services," in contrast to the state and its agencies, counties, cities, and school districts. *Brown & Gay Eng'g*, 461 S.W.3d at 121.

Finally, we note that the San Antonio Court of Appeals has reached the conclusion we reach here—that economic development corporations generally do not enjoy governmental immunity. *See Little*, 422 S.W.3d at 42. After "[c]onstruing the plain language of the Act" that authorizes creation of economic development corporations, the court held that an economic development corporation "is not inherently entitled to governmental immunity." *Id.* We agree with the San Antonio Court of Appeals. RDC is not immune from suit or liability except as otherwise provided by statute.

### 5. *Earlier cases are distinguishable*

 Like the court in *Little*, we distinguish those cases that have suggested, or have been interpreted as suggesting, that economic development corporations are entitled to governmental immunity from suit. *Little*, 422 S.W.3d at 44. In *Weir Brothers, Inc. v. Longview Economic Development Corp.*, 373 S.W.3d 841 (Tex. App.—Dallas 2012, no pet.), the Dallas Court of Appeals affirmed the grant of a Type A corporation's plea to the jurisdiction. The corporation asserted in its plea that the Development Corporation Act "grants immunity to a development corporation and its directors." *Id.* at 843. The court of appeals agreed, but the court premised its holding on the statutory provision that grants Type A corporations immunity from liability, not from suit. *See id.* at 846 (citing Tex. Loc. Gov't Code § 504.107, which provides that a Type A corporation is "not liable *for damages* arising from the performance of a governmental function") (emphasis add-

ed); *see also id.* (concluding that the corporation was "immune *from liability* under the Act") (emphasis added). Immunity from liability is an affirmative defense and is not a proper basis for a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 224-26; *Jones*, 8 S.W.3d at 638. *Weir* does not hold that an economic development corporation is immune from suit.

In *Purdin v. Copperas Cove Economic Development Corp.*, 143 S.W.3d 290 (Tex. App.—Waco 2004, pet. dism'd), the Waco Court of Appeals held that an economic development corporation is an "employer" for purposes of the Texas Commission on Human Rights Act, because it is a "state instrumentality." *See id.* at 293 (citing Tex. Lab. Code § 21.002(8), which defines "employer" to include "a county, municipality, state agency, or state instrumentality"). In discussing why an economic development corporation is a "state instrumentality," the court stated that economic development corporations "have been created under the authority of the Legislature and have sovereign immunity." *Id.* at 295 (citing *Rayl v. Borger Econ. Dev. Corp.*, 963 S.W.2d 109 (Tex. App.—Amarillo 1998, no pet.)). Because the Waco court relied on *Rayl* for the notion that economic development corporations have immunity, we turn to *Rayl*.

In *Rayl*, the Amarillo Court of Appeals affirmed the trial court's ruling that a plaintiff's claims were barred by an economic development corporation's immunity. *See* 963 S.W.2d at 110, 114-15. But the corporation asserted its immunity in a motion for summary judgment, relying on the statutory provision granting the corporation immunity from damages arising from the performance of a governmental function. *Id.* at 110. It was proper for the trial court to consider the merits of the corporation's defense—immunity from liability for damages—in a motion for summary

judgment. *See Baylor Coll. of Med. v. Tate*, 77 S.W.3d 467, 472 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Accordingly, neither *Rayl* nor *Purdin*, which relies on *Rayl*, stand for the proposition that an economic development corporation is entitled to governmental immunity from suit.

The San Antonio Court of Appeals also cited, and distinguished, *City of Weslaco v. Borne*, 210 S.W.3d 782 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). In *Borne*, an economic development corporation claimed entitlement to governmental immunity based on former article 5190.6 of the Texas Revised Civil Statutes, which was substantively the same as the relevant provisions of the Development Corporation Act at issue here. *Id.* at 788-89 & n.1. The court stated that the statute "expressly extends governmental immunity to economic development corporations." *Id.* at 788 n.1 (citing Tex. Rev. Civ. Stat. art. 5190.6 § 4B(m) ("[T]he corporation is a governmental unit and its actions are governmental functions."); *Purdin*, 143 S.W.3d at 295; and *Rayl*, 963 S.W.2d at 114-15). But the portion of the statute cited and quoted by *Borne* relates only to the Texas Tort Claims Act, as we explain further below. *See* Tex. Rev. Civ. Stat. art. 5190.6 § 4B(m), *re-codified at* Tex. Loc. Gov't Code § 505.106(b) ("For the purposes of Chapter 101, Civil Practice and Remedies Code, the corporation is a governmental unit and its actions are governmental functions."). Accordingly, *Borne* does not support RDC's argument that it is immune from IPA's breach of contract claims.

Nothing in these earlier cases convinces this court that economic development corporations are generally immune from suit under the common law.

6. *Has the legislature granted RDC immunity from suit by statute?*

■ Though RDC does not enjoy governmental immunity under the common law, we consider whether the legislature has nevertheless granted economic development corporations immunity. *See Little*, 422 S.W.3d at 42; *see also, e.g., LTTS Charter Sch.*, 342 S.W.3d at 89-90 (Guzman, J., dissenting) (discussing examples of statutory immunity).

As a Type B corporation, RDC is governed by Chapter 505 of the Local Government Code. Section 505.106 provides:

(a) The following are not liable for damages arising from the performance of a governmental function of a Type B corporation or the authorizing municipality:

 (1) the corporation;

 (2) a director of the corporation;

 (3) the municipality;

 (4) a member of the governing body of the municipality; or

 (5) an employee of the corporation or municipality.

(b) For purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation is a governmental unit and the corporation's actions are governmental functions.

Tex. Loc. Gov't Code § 505.106.

Subsection (a) provides that Type B corporations are immune *from liability* for damages arising from the performance of a governmental function. *See Little*, 422 S.W.3d at 44 ("This statutory shield . . . is limited: it grants only immunity from liability and only for the [corporation's] performance of a governmental function."). As noted above, immunity from liability is not jurisdictional and is not a proper basis for a defendant's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 224-26; *Jones*, 8

S.W.3d at 638. Thus, RDC cannot rely on subsection (a) as a shield from IPA's suit, and the trial court could not permissibly grant RDC's plea to the jurisdiction on this ground.[8]

In its plea to the jurisdiction, RDC relied solely on subsection (a), but on appeal RDC also invokes subsection (b). While this court previously would consider only grounds raised in the plea, we now consider all of a defendant's arguments for immunity from suit. *Compare Tex. S. Univ. v. Rodriguez*, No. 14-10-01079-CV, 2011 WL 2150238, at *6 n.7 (Tex. App.—Houston [14th Dist.] June 2, 2011, no pet.) (mem. op.) (appellate courts generally do not consider grounds not raised in a plea to the jurisdiction), *with Bansal v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 502 S.W.3d 347, 352 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[W]e are not merely authorized to consider new immunity-from-suit arguments; we are required to do so."). We address the language in subsection (b), in part because other courts have relied on it to hold that economic development corporations are entitled to immunity. We have discussed and distinguished these earlier cases above.

■ In subsection (b), the legislature statutorily invoked the common law doctrine of governmental immunity to protect a Type B corporation—but only for certain claims. Subsection (b) grants a Type B corporation governmental-unit status and makes its actions governmental functions, thus rendering the corporation immune from suit when performing those governmental functions. Tex. Loc. Gov't Code § 505.106(b); *accord City of Galveston*, 217 S.W.3d at 469 (governmental entities enjoy immunity from suit when performing gov-

8. We therefore express no view on whether the liability alleged here arises from the per-

formance of a governmental function.

ernmental functions). The immunity shield is limited, however, by the phrase "For purposes of Chapter 101, Civil Practice and Remedies Code." Tex. Loc. Gov't Code § 505.106(b). Chapter 101 is the Texas Tort Claims Act, and its provisions control governmental liability for tort claims. *See* Tex. Civ. Prac. & Rem. Code ch. 101. Accordingly, a Type B corporation is generally immune from tort claims, except for those claims for which the legislature has waived immunity under the Tort Claims Act. *See City of Galveston*, 217 S.W.3d at 468 ("[A] governmental unit is immune from tort liability unless the Legislature has waived immunity.").

In sum, section 505.106: (1) statutorily invokes common law governmental immunity for Type B corporations, but only for certain tort claims; and (2) provides immunity from liability for claims arising from a Type B corporation's performance of a governmental function. *See Little*, 422 S.W.3d at 44. To the extent IPA asserts tort claims against RDC, those claims are not at issue for purposes of this appeal.

Because RDC is not immune from IPA's breach of contract and declaratory judgment claims under section 505.106(b) and because RDC's immunity from liability, if any, under section 505.106(a) is not a proper basis for a plea to the jurisdiction, we conclude that the trial court correctly denied the portion of RDC's plea from which RDC now appeals. We therefore overrule RDC's four issues challenging the partial denial of its plea. Because the propriety of the trial court's partial grant of RDC's plea on other grounds is not before us, we express no view as to those other grounds.

### Conclusion

Based on our interpretation of the text of the Development Corporation Act, as well as our analysis of the principles underlying the common law doctrine of im-

munity, we hold that economic development corporations like RDC generally do not enjoy common law immunity from suit.

Because we conclude that RDC is not entitled to common law governmental immunity, and because RDC has not identified any statute granting RDC immunity from IPA's claims, we affirm the trial court's partial denial of RDC's plea to the jurisdiction.