**Dismissed in Part, Affirmed in Part, and Opinion Filed December 2, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00483-CV

**152 LAKEWEST COMMUNITY, LP AND SUPREME DEVELOPMENT CORPORATION, Appellants**
**V.**
**AMERISTAR APARTMENT SERVICES, L.P. D/B/A AMERISTAR SCREEN & GLASS, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-15636**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Partida-Kipness

Appellants 152 Lakewest Community, LP (Lakewest) and Supreme Development Corporation (Supreme) appeal the denial of their pleas to the jurisdiction. In three issues, Lakewest and Supreme contend they are entitled to governmental immunity from suit. Finding no error, we affirm the trial court's order denying Supreme's jurisdictional pleas. We dismiss Lakewest's appeal for lack of jurisdiction.

# BACKGROUND

The underlying facts are well-known to the parties; therefore, we will not provide a detailed statement of facts but instead provide only those facts necessary for disposition of the appeal. *See* TEX. R. APP. P. 47.1. In 2017, appellee Ameristar Apartment Services, L.P. d/b/a Ameristar Screen & Glass (Ameristar) performed four repair orders for windows at Lakewest Townhomes (the Property) in Dallas. Ameristar entered into the repair orders with the Property's purported property manager, Orion Real Estate Services, Inc. d/b/a Allied Orion Group (Orion). Ameristar contends it fulfilled its contractual obligations and completed the repair work but was not paid for the services and materials provided. Ameristar brought the underlying lawsuit to recover the outstanding balance of $2,702.42 from the Property's purported owner, the Dallas Housing Authority (DHA). DHA answered and filed a plea to the jurisdiction asserting governmental immunity. At the hearing on DHA's plea, counsel for DHA represented that Lakewest was the owner of the improvements on the Property. Ameristar filed its Second Amended Petition and added Lakewest and Supreme as parties. The trial court granted DHA's plea shortly thereafter.

Lakewest and Supreme answered. Supreme filed a plea to the jurisdiction asserting governmental immunity on February 23, 2019. The trial court denied that plea on June 12, 2019. Lakewest filed a plea to the jurisdiction to assert governmental immunity on February 3, 2020. Included within Lakewest's plea was

a second plea by Supreme. The trial court denied both pleas on March 31, 2020, and April 20, 2020, respectively. Lakewest and Supreme then filed a joint plea to the jurisdiction on April 20, 2020, which the trial court denied on May 18, 2020. Lakewest and Supreme appealed the March 31, April 20, and May 18 orders denying their pleas. In three issues, Lakewest and Supreme argue that the trial court should not have denied their pleas to the jurisdiction.

## STANDARD OF REVIEW

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *see also Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). The existence of subject-matter jurisdiction is a question of law, and we review the trial court's ruling on a plea to the jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Miranda*, 133 S.W.3d at 226, 228; *City of Wylie v. Taylor*, 362 S.W.3d 855, 859 (Tex. App.—Dallas 2012, no pet.).

## APPELLATE JURISDICTION

We may not address the merits of an appeal absent jurisdiction. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars and No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 291–92 (Tex. 2013). Therefore, we begin our analysis by considering our appellate jurisdiction. As a general rule, only final judgments and orders are appealable. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).

–3–

"The legislature, however, has specified circumstances in which a litigant may appeal immediately from an otherwise unappealable order because a final judgment has not been rendered." *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 526 S.W.3d 693, 698 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 571 S.W.3d 738, 741 (Tex. 2019). Lakewest and Supreme maintain that they are governmental units under section 101.001 of the Texas Tort Claims Act and, as such, may appeal from the trial court's orders denying their pleas to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE § 101.001(3) (providing four definitions of "governmental unit"); TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (appeal permitted from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [Texas Civil Practice and Remedies Code] Section 101.001."). We, therefore, have jurisdiction over this appeal with respect to Lakewest and Supreme only if they are "governmental units." *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

Lakewest and Supreme contend they are "governmental units" as defined by section 101.001(3)(D), which defines "governmental unit" as "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D). The phrase "institution, agency, or organ of government" has a broad meaning and encompasses an "entity that operates as part of a larger governmental system." *Univ. of the*

–4–

*Incarnate Word v. Redus*, 518 S.W.3d 905, 910–11 (Tex. 2017) (concluding a private university was a "governmental unit" under Subsection (D) for purposes of law enforcement). To satisfy the second prong of Subsection (D), "the entity asserting immunity from suit must have a legislative or constitutional source from which it derived its status and authority." *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 77 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (op. on reh'g) (citing *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76, 81 (Tex. 2011)).

Supreme is a public facility corporation (PFC) that is owned and operated by DHA, which is a governmental unit. *See* TEX. LOC. GOV'T CODE § 392.006 (designating housing authorities units of government for all purposes); *see also Orion Real Estate v. Sarro*, 559 S.W.3d 599, 607 (Tex. App.—San Antonio 2018, no pet.) (first citing section 392.006 and then citing *Marshall v. Hous. Auth. of City of San Antonio*, 183 S.W.3d 689, 690 n.1 (Tex. App.—San Antonio 2003), *vacated on other grounds*, 198 S.W.3d 782 (Tex. 2006)). The Texas Local Government Code allows a housing authority to create a nonprofit public facility corporation to (1) issue bonds; (2) finance public facilities on the housing authority's behalf; or (3) "acquire, construct, rehabilitate, renovate, repair, equip, furnish, or place in service public facilities," which includes housing projects. TEX. LOC. GOV'T CODE §§ 303.021, 392.066.

Under these statutes, Supreme is an "institution, agency, or organ" of government whose "status and authority" are derived from laws passed by the

legislature. *See Orion Real Estate*, 559 S.W.3d at 603 (concluding PFC owned and operated by San Antonio Housing Authority was governmental unit under the Act) (citing *City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 40–41 (Tex. App.—San Antonio 2013, no pet.) (concluding an economic development corporation is a "governmental unit" under Subsection (D) because its "powers, privileges, and functions are specified and circumscribed by statute")). Because Supreme is a "governmental unit" under Subsection (D), we have jurisdiction over this interlocutory appeal as it relates to Supreme. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

Lakewest argues it is also a governmental unit because it was created by Supreme to carry out DHA's functions of acquiring title to the Lakeview Townhomes and obtain low-cost loans to create that public facility. Citing sections 303.041 and 303.002(a) of the local government code, Lakewest contends that it is a PFC or its equivalent and, as such, a governmental unit like Supreme because Lakewest carries out some duties of a PFC. We disagree. The record shows Lakewest is a Texas limited partnership and Supreme is Lakewest's general partner. As a limited partnership, Lakewest is not a corporation and, therefore, cannot be considered a public facility corporation. *See SJ Med. Ctr., L.L.C. v. Estahbanati*, 418 S.W.3d 867, 869 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (dismissing appeal of order denying plea to the jurisdiction for lack of jurisdiction because, as an LLC, the party was not a "nonprofit corporation, partnership, or sole

proprietorship" as required to be a governmental unit under applicable statute). Indeed, Chapter 303 of the local government code under which Lakewest seeks immunity applies to corporations. TEX. LOC. GOV'T CODE § 303.002(b) ("The legislature intends that a corporation created under this chapter be a public corporation, constituted authority, and instrumentality authorized to issue bonds on behalf of its sponsor . . . ."); *see e.g.*, *id.* at §§ 303.022, 303.024, 303.025 (creation and operation of PFCs). Further, DHA's general counsel. Gregory T. Mays, testified via affidavit below that "DHA formed Lakewest to act as the operator and manager of the Lakeview Townhomes." Absent statutory authority not present here, an entity hired to manage such a facility is not a governmental unit for purposes of our jurisdiction. *See Orion Real Estate*, 559 S.W.3d at 603 (private company hired as an independent contractor to manage apartments developed by housing authority was not a governmental unit). On this record, we conclude Lakewest is not a "governmental unit" under Subsection (D), and we therefore do not have jurisdiction over this interlocutory appeal as it relates to Lakewest. *See id.* (dismissing interlocutory appeal after rejecting argument that appellant was a governmental unit); *see also Baylor Scott & White v. Peyton*, 549 S.W.3d 242, 256 (Tex. App.—Fort Worth 2018, no pet.) (same); *AECOM USA, Inc. v. Mata*, No. 04-15-00773-CV, 2016 WL 5112222, at *4 (Tex. App.—San Antonio Sept. 21, 2016, pet. denied) (mem. op.) (concluding a private contractor hired by a state agency was not a "governmental unit" under Section 101.001(3) and dismissing the appeal for lack of

jurisdiction). Accordingly, we must dismiss this appeal for lack of jurisdiction as to Lakewest.

**IMMUNITY ANALYSIS**

We now turn to the merits of Supreme's appeal. Although we have determined we have jurisdiction over this interlocutory appeal because Supreme falls within the "broad definition" of "governmental unit," that does not mean that Supreme enjoys immunity from suit. *See Orion Real Estate*, 559 S.W.3d at 603–04. Whether this Court has appellate jurisdiction over an interlocutory appeal is a separate question decided under within a separate analytical framework from the question of whether the party is entitled to immunity. *Incarnate Word*, 518 S.W.3d at 911 (quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432 (Tex. 2016)).

**I.     Governmental immunity as a PFC**

In its first issue, Supreme argues it is entitled to governmental immunity because Supreme is a PFC. This is a matter of first impression in our Court. However, we find our sister court's analysis of this issue in *Orion Real Estate* instructive and apply it here. *See Orion Real Estate*, 559 S.W.3d at 604–07.

In *Orion Real Estate*, the plaintiff's son was bit by a dog while playing outside of an apartment complex. *Id.* at 601. The complex was owned by the San Antonio Housing Authority (SAHA) and Woodhill Public Facility Corp., and managed by Orion. *Id.* Woodhill, like Supreme, was a PFC owned and operated by a housing authority and, like Lakewest, owned the apartment buildings. *Id.* at 603, 607. The

appellate court concluded that Woodhill was not entitled to governmental immunity because "PFCs, like EDCs, 'are, in essence, nonprofit corporations that undertake discrete projects for the benefit of their [sponsors].'" *Id.* at 606–07 (quoting *Rosenberg Dev. Corp.*, 526 S.W.3d at 704).

In reaching this conclusion, the court first analyzed the nature of PFCs. *Id.* at 605. The court explained that the Public Facility Corporation Act was enacted to "authorize the creation and use of public facility corporations with the broadest possible powers to finance or to provide for the acquisition, construction, rehabilitation, renovation, repair, equipping, furnishing, and placement in service of public facilities in an orderly, planned manner and at the lowest possible borrowing costs." *Id.*(quoting TEX. LOC. GOV'T CODE § 303.002). The Act allows a political subdivision known as a "sponsor", including a housing authority, to create a PFC to issue bonds to purchase the authority's obligations, finance public facilities on the authority's behalf, and acquire, construct, rehabilitate, renovate, repair, equip, furnish, or place in service public facilities. TEX. LOC. GOV'T CODE §§ 303.003(11), 303.021. In addition, a housing authority is permitted to create a PFC to "enter into a lease or exchange with, or make a mortgage or loan to the [PFC] to . . . acquire, construct, rehabilitate, renovate, repair, equip, furnish, or provide assistance to a . . . housing project." *Id.* § 392.066(a)(1). Although the Act permits a PFC to take various actions, such as issuing bonds if authorized by its sponsor and "acquire title to a public facility" in order to take statutorily-authorized actions, the PFCs sponsor

–9–

"may not delegate to a corporation the power of taxation or eminent domain, a police power, or an equivalent sovereign power of this state or the sponsor." *Id.* § 303.041. Moreover, a PFC's sponsor "in its sole discretion, may alter the [PFC's] structure, organization, programs, or activities, . . . ." *Id.* § 303.045.

The *Orion Real Estate* court then compared economic development corporations (EDCs) with PFCs because EDCs are not entitled to governmental immunity from suit. *Orion Real Estate*, 559 S.W.3d at 607. The court concluded that "EDCs and PFCs share many similar features," including their corporate set-up as nonprofit corporations that are not permitted to exert the governmental powers delegated to the political subdivision that created the PFC. *Id.* at 606. The court concluded that, like EDCs, PFCs "are not distinct governmental entities entitled to governmental immunity" and affirmed the denial of Woodhill's plea to the jurisdiction on its general immunity argument. *Id.* at 607.

The same analysis applies here. Supreme, like Woodhill, is a PFC that was created by a housing authority to perform certain tasks and fulfill purposes pursuant to the Act. Although the DHA exerts a high degree of control over Supreme's existence, activities, and whether to issue bonds, we agree with the San Antonio court of appeals's conclusion that PFCs, like EDCs, "are, in essence, nonprofit corporations that undertake discrete projects for the benefit of their [sponsors]" and are not distinct governmental entities entitled to governmental immunity. *Id.* at 606–07. We overrule Supreme's first issue.

–10–

## II. Derivative immunity

In its second issue, Supreme argues it is entitled to derivative immunity because Supreme acted as DHA's agent and acted without discretion regarding the maintenance of the property. An agent of a governmental entity may be entitled to derivative immunity if the agent shows that the "complained-of conduct . . . was effectively attributed to the government" in that it acted "*as* the government without discretion." *Orion Real Estate*, 559 S.W.3d at 607 (emphasis in original); *see also Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125–26 (Tex. 2015) (noting that in cases in which a government contractor was entitled to immunity, "the complained-of conduct for which the contractor was immune was effectively attributed to the government. That is, the alleged cause of the injury was not the independent action of the contractor, but the action taken by the government *through* the contractor) (emphasis in original).

*Orion Real Estate* is again instructive on the question of derivative immunity. There, the court determined that Woodhill was not entitled to derivative immunity as SAHA's agent because Woodhill presented no evidence "that it acted without discretion and at the direction of SAHA regarding the dog's presence on the property or any security systems or procedures in place to protect against dog attacks." *Orion Real Estate*, 559 S.W.3d at 607 (citing TEX. LOC. GOV'T CODE §§ 303.021, 392.066); *see also Lenoir*, 491 S.W.3d at 86 (concluding a medical clinic established by a state

university was not entitled to derivative governmental immunity where the complained-of actions were discretionary).

When determining whether to extend immunity under an assertion of derivative liability, a court must look to "whether the entity that is seeking to benefit from another's immunity had discretion as it relates to the activities underlying the plaintiff's claims." *Lenoir*, 491 S.W.3d at 88. Here, Ameristar contends it has been injured by Lakewest and Supreme's failure to pay four invoices for window repairs completed at the Property. There is no evidence that the DHA had a right to control contracting with and payment of contractors such as Ameristar for work completed on a property established or managed by a PFC such as Supreme. On the contrary, the record includes evidence showing that DHA granted Supreme discretion regarding the repair and maintenance of the Property, hiring contractors, and paying contractors, which encompass the complained-of conduct in this case. For example, Gregory Mays, DHA's general counsel, conceded in his deposition that DHA is not involved in hiring contractors. Further, Supreme's bylaws and Articles of Incorporation provide that Supreme, through its President, had the authority to sign and execute contracts, and that Supreme had express authority to pay contractors and execute contracts and pay for services rendered by private persons. This evidence supports the trial court's implied finding that Supreme acted with discretion in hiring Ameristar to complete the window repairs, rather than acting at DHA's direction. On this record, Supreme acted with discretion in relation to the injuries alleged by

–12–

Ameristar and is, therefore, not entitled to derivative immunity. We overrule Supreme's second issue.

### III. Waiver of immunity

In its third and final issue, Supreme argues that Ameristar did not establish a waiver of their immunity. We have concluded that Supreme is not entitled to immunity. As such, we need not reach Supreme's third issue, which is premised on a finding that Supreme is entitled to immunity from suit.

### CONCLUSION

For these reasons, we dismiss Lakewest's appeal for lack of jurisdiction, overrule Supreme's appellate issues, and affirm the trial court's orders denying Supreme's pleas to the jurisdiction.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200483F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

152 LAKEWEST COMMUNITY, LP AND SUPREME DEVELOPMENT CORPORATION, Appellant

No. 05-20-00483-CV    V.

AMERISTAR APARTMENT SERVICES, L.P. D/B/A AMERISTAR SCREEN & GLASS, Appellee

On Appeal from the 192nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-17-15636. Opinion delivered by Justice Partida-Kipness. Justices Myers and Garcia participating.

In accordance with this Court's opinion of this date, we **DISMISS** appellant 152 Lakewest Community, LP's appeal for lack of jurisdiction, and **AFFIRM** the trial court's orders denying appellant Supreme Development Corporation's pleas to the jurisdiction.

It is **ORDERED** that appellee AMERISTAR APARTMENT SERVICES, L.P. D/B/A AMERISTAR SCREEN & GLASS recover its costs of this appeal from appellants 152 LAKEWEST COMMUNITY, LP AND SUPREME DEVELOPMENT CORPORATION.

Judgment entered this 2nd day of December 2021.