Opinion by: Irene Rios, Justice
Appellee Martha R. Sarro, individually and as next friend of Jared Adrian Mata, a minor, sued Appellants Orion Real Estate Services, Inc. ("Orion") and Woodhill Public Facility Corp. ("Woodhill") alleging their negligence caused Jared injuries when he was bitten by a dog. Appellants filed a plea to the jurisdiction, asserting their immunity from suit. Appellants appeal the trial court's denial of the plea. We affirm in part and dismiss in part.
BACKGROUND
On January 26, 2016, Sarro filed an amended petition bringing claims against Orion, Woodhill, George Phillips, and the San Antonio Housing Authority ("SAHA") seeking damages for injuries Jared sustained when he was allegedly bitten by a dog on January 18, 2014 while playing outside in an apartment complex, Woodhill Apartments. Sarro alleged the property is owned by SAHA and Woodhill and managed by Orion, and that the dog was under the care and control of Phillips, a resident of the property. On October 7, 2016, SAHA filed a motion to dismiss for lack of jurisdiction, arguing that as a local government entity, it was immune from suit, and Sarro did not establish the State's consent to *602 waive immunity. On November 3, 2016, the trial court signed an order granting SAHA's motion.
On September 6, 2017, Orion and Woodhill together filed a hybrid plea to the jurisdiction and traditional motion for summary judgment. In the plea to the jurisdiction, Appellants argued they were entitled to governmental immunity from suit and that Sarro had not pleaded any "specific legislative grant of permission to sue [Appellants, or any] conduct by [Appellants] to which a waiver of immunity from suit might apply." On October 5, 2017, the trial court signed an order denying Appellants' hybrid plea to the jurisdiction and traditional motion for summary judgment. This interlocutory appeal followed.
APPELLATE JURISDICTION
As a general rule, only final judgments and orders are appealable. Lehmann v. Har-Con Corp. , 39 S.W.3d 191, 195 (Tex. 2001). "The legislature, however, has specified circumstances in which a litigant may appeal immediately from an otherwise unappealable order because a final judgment has not been rendered." Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc. , 526 S.W.3d 693, 698 (Tex. App.-Houston [14th Dist.] 2017, pet. granted). Appellants rely on the statutory provision that allows a litigant to appeal from a trial court's interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [Texas Civil Practice and Remedies Code] Section 101.001." See TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). Thus, we have jurisdiction over this appeal with respect to each appellant only if they are "governmental units." See id.
Texas Civil Practice and Remedies Code Section 101.001 provides the following definition for the term "governmental unit":
(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
(C) an emergency service organization; and
(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.
Id. at § 101.001(3).
Appellants do not point to any evidence that they are of the "several agencies of government that collectively constitute the government of this state," "a political subdivision of this state," or "an emergency service organization." See id. However, " section 101.001(3)(D) is a category with a 'broad definition' of 'governmental unit.' " City of Leon Valley Econ. Dev. Corp. v. Little , 422 S.W.3d 37, 40 (Tex. App.-San Antonio 2013, no pet.) (quoting LTTS Charter Sch., Inc. v. C2 Constr., Inc. , 342 S.W.3d 73, 76 (Tex. 2011) ). Thus, we must address whether Appellants are "governmental units" under Section 101.001(3)(D) ("Subsection (D)").
"To be a governmental unit under [Subsection (D), an entity] must (1) be an *603 'institution, agency, or organ of government' and (2) derive its 'status and authority' as such from 'laws passed by the Legislature.' " Univ. of the Incarnate Word v. Redus , 518 S.W.3d 905, 909 (Tex. 2017) (quoting § 101.001(3)(D) ). The phrase "institution, agency, or organ of government" has a broad meaning and encompasses any "entity that operates as part of a larger governmental system." Id. at 910-11 (concluding a private university was a "governmental unit" under Subsection (D) for purposes of law enforcement). To satisfy the second prong of Subsection (D), "the entity asserting immunity from suit must have a legislative or constitutional source from which it derived its status and authority." Lenoir v. U.T. Physicians , 491 S.W.3d 68, 77 (Tex. App.-Houston [1st Dist.] 2016, pet. denied) (op. on reh'g) (citing LTTS Charter Sch., Inc. , 342 S.W.3d at 76, 81 ).
Woodhill is a public facility corporation that is owned and operated by SAHA, which is a governmental unit. See TEX. LOC. GOV'T CODE § 392.006 (designating housing authorities units of government for all purposes); see also Marshall v. Hous. Auth. of City of San Antonio , 183 S.W.3d 689, 690 n.1 (Tex. App.-San Antonio 2003), vacated on other grounds , 198 S.W.3d 782 (Tex. 2006). The Texas Local Government Code allows a housing authority to create a nonprofit public facility corporation to (1) issue bonds; (2) finance public facilities on the housing authority's behalf; or (3) "acquire, construct, rehabilitate, renovate, repair, equip, furnish, or place in service public facilities," which includes housing projects. TEX. LOC. GOV'T CODE §§ 303.021, 392.066.
Thus, Woodhill is an "institution, agency, or organ" of government whose "status and authority" are derived from laws passed by the legislature. See Leon Valley , 422 S.W.3d at 40-41 (concluding an economic development corporation is a "governmental unit" under Subsection (D) because its "powers, privileges, and functions are specified and circumscribed by statute"). Accordingly, because Woodhill is a "governmental unit" under Subsection (D), we have jurisdiction over this interlocutory appeal as it relates to Woodhill. See TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).
The record shows Orion is a private company hired as an independent contractor[1] to manage Woodhill Apartments. Orion does not point to any constitutional or statutory provision from which it derives its status and authority, nor is this court aware of any constitutional or statutory provision conferring authority on Orion. Accordingly, Orion is not a "governmental unit" under Subsection (D), and we therefore do not have jurisdiction over this interlocutory appeal as it relates to Orion. See AECOM USA, Inc. v. Mata , No. 04-15-00773-CV, 2016 WL 5112222, at *2, *4 (Tex. App.-San Antonio Sept. 21, 2016, pet. denied) (mem. op.) (concluding a private contractor hired by a state agency was not a "governmental unit" under Section 101.001(3) and dismissing the appeal for lack of jurisdiction).
IMMUNITY
Woodhill argues it is entitled to governmental immunity from suit in this case. Although we have determined we have jurisdiction over this interlocutory appeal because Woodhill falls within the "broad definition" of "governmental unit," it does not necessarily follow that Woodhill enjoys immunity from suit. See Rosenberg Dev. Corp. , 526 S.W.3d at 701. "To determine whether an entity is immune, [we] rely not on [ Section 101.001(3) 's] definition of governmental unit ... but on the 'nature *604 and purposes' of sovereign immunity." Incarnate Word , 518 S.W.3d at 911 (quoting Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 432 (Tex. 2016) ). Whether this court has appellate jurisdiction over an interlocutory appeal and "whether an entity has sovereign immunity are separate questions with separate analytical frameworks." Id.
Although often used interchangeably, sovereign and governmental immunity are two distinct but interrelated common law doctrines that protect governmental entities from liability. Travis Cent. Appraisal Dist. v. Norman , 342 S.W.3d 54, 57-58 (Tex. 2011). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." Id. Sovereign and governmental immunity "encompass[ ] both immunity from suit and immunity from liability." Brown & Gay Eng'g, Inc. v. Olivares , 461 S.W.3d 117, 121 (Tex. 2015). "Immunity from liability is an affirmative defense that bars enforcement of a judgment against a governmental entity, while immunity from suit bars suit against the entity altogether and may be raised in a plea to the jurisdiction." Id.
"[I]t is firmly established that 'an important purpose [of immunity] is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments.' " Wasson Interests, Ltd. , 489 S.W.3d at 432 (quoting Tooke v. City of Mexia , 197 S.W.3d 325, 332 (Tex. 2006) ). "Sovereign immunity benefits the public 'by preventing potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation,' but it does so at the expense of 'injured individuals' who, when sovereign immunity applies, must singularly bear the costs and consequences of the improvident governmental actions that led to their injuries." Lenoir , 491 S.W.3d at 82 (quoting Brown & Gay , 461 S.W.3d at 121 ). Because immunity is a common law doctrine, it "remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance." Reata Const. Corp. v. City of Dallas , 197 S.W.3d 371, 375 (Tex. 2006). "In doing so ... we take as guides both the nature and purposes of immunity ... [and] are also mindful that 'the pragmatic rationale supporting this immunity ... helps to delineate its limits.' " Wasson Interests, Ltd. , 489 S.W.3d at 432 (quoting Houston Belt & Terminal Ry. Co. v. City of Houston , 487 S.W.3d 154, 157 (Tex. 2016) ).
We now turn to the issue of whether Woodhill is entitled to governmental immunity.
Whether Woodhill is Entitled to Governmental Immunity
To determine whether Woodhill is entitled to governmental immunity, we must determine whether a public facility corporation ("PFC") that is created, owned, and operated by a municipal housing authority enjoys governmental immunity. We note that public housing authorities are considered political subdivisions entitled to governmental immunity in the performance of their functions. See TEX. LOC. GOV'T CODE § 392.006 ("For all purposes, including the application of the Texas Tort Claims Act ... a housing authority is a unit of government and the functions of a housing authority are essential governmental functions and not proprietary functions.");
*605 Hous. Auth. of City of Dallas v. Killingsworth , 331 S.W.3d 806, 810 (Tex. App.-Dallas 2011, pet. denied). However, an entity created by a political subdivision pursuant to statutory authority is not necessarily entitled to governmental immunity. See Leon Valley , 422 S.W.3d at 41-42 (concluding an economic development corporation created by a municipality was not entitled to governmental immunity).
The Nature of Public Facility Corporations
The legislature enacted the Public Facility Corporation Act to "authorize the creation and use of public facility corporations with the broadest possible powers to finance or to provide for the acquisition, construction, rehabilitation, renovation, repair, equipping, furnishing, and placement in service of public facilities in an orderly, planned manner and at the lowest possible borrowing costs." TEX. LOC. GOV'T CODE § 303.002. The legislature intended PFCs created under the Act to be public nonprofit corporations, "engaged exclusively in performance of charitable functions." Id. §§ 303.002, 303.042.
The Act allows a political subdivision (referred to within the Act as a "sponsor"), including a housing authority, to create a PFC to issue bonds to purchase the authority's obligations, finance public facilities on the authority's behalf, and acquire, construct, rehabilitate, renovate, repair, equip, furnish, or place in service public facilities. Id. §§ 303.003(11), 303.021. Additionally, Section 392.066 of the Texas Housing Authorities Law allows a housing authority that creates a PFC to "enter into a lease or exchange with, or make a mortgage or loan to the [PFC] to ... acquire, construct, rehabilitate, renovate, repair, equip, furnish, or provide assistance to a ... housing project." Id. § 392.066(a)(1). A PFC may issue bonds only if authorized by its sponsor. Id. § 303.071. Bonds issued by a PFC "are payable from revenue derived from public facilities or sponsor obligations ... [and] are not an obligation or a pledge of the faith and credit of this state, a sponsor or other political subdivision of this state, or an agency of this state." Id. § 303.072.
The Act instructs that PFCs are to have articles of incorporation, officers, and a board of directors. Id. §§ 303.024, 303.035, 303.036. The Act provides that PFCs have the power to "acquire title to a public facility in order to lease, convey, or dispose of the public facility to the corporation's sponsor or ... another entity"; "sell convey, mortgage, pledge, lease, exchange, transfer, and otherwise dispose of all or any part of the corporation's property and other assets, including sponsor obligations"; "make a contract ... incur a liability, and borrow money at interest"; and "sue and be sued in its corporate name."[2] Id. § 303.041. However, "[a] sponsor may not delegate to a corporation the power of taxation or eminent domain, a police power, or an equivalent sovereign power of this state or the sponsor."Id. Moreover, a PFC's sponsor "in its sole discretion, may alter the [PFC's] structure, organization, programs, or activities." Id. § 303.045.
Economic Development Corporations are Not Entitled to Governmental Immunity from Suit
Woodhill does not cite to any authority examining whether a PFC is entitled to governmental immunity, and this court is not aware of any. Thus, in the absence of authority on this issue, we look to the *606 analysis courts have employed when determining whether other types of nonprofit corporations created by political subdivisions, such as economic development corporations, are entitled to governmental immunity.
In City of Leon Valley Economic Development Corp. v. Little , this court held that an economic development corporation ("EDC") created by a political subdivision is not entitled to governmental immunity. 422 S.W.3d at 42. In so concluding, this court noted that governmental immunity has traditionally been known to protect "political subdivisions of the state performing governmental functions," and the legislature expressly declared that an EDC is not a political subdivision. Id. Second, this court noted that an EDC is statutorily structured as a nonprofit corporation. Id. Lastly, this court observed that the legislature had expressly prohibited a political subdivision that creates an EDC from delegating its sovereign powers to the EDC. Id.
The Fourteenth Court of Appeals recently came to the same conclusion in Rosenberg Development. Corp. v.Imperial Performing Arts, Inc. , 526 S.W.3d at 706. Like this court in Leon Valley , the court in Rosenberg considered that EDCs are not political subdivisions, EDCs have the powers and privileges of a nonprofit corporation, and the legislature did not grant EDCs the "powers of government." Id. at 704. Additionally, the court noted that EDCs are publicly funded through sales and use taxes or the proceeds from revenue bonds. Id. at 703. The court explained that although EDCs "are publicly funded, they are, in essence, nonprofit corporations that undertake discrete projects for the benefit of their authorizing units ... [and thus] are not 'distinct governmental entit[ies].' " Id. at 704 (citations omitted). The court acknowledged that "[g]iven the [Development Corporation] Act's scheme and the degree of control an authorizing governmental unit exerts over the existence, activities, and funding of [EDCs], such corporations have a near-governmental character." Id. at 706. However, "[c]onsidering the nature of [EDCs] and the fundamental purposes of governmental immunity," the court concluded EDCs are not entitled to governmental immunity. Id.
Public Facility Corporations are Not Governmental Entities Entitled to Immunity from Suit
EDCs and PFCs share many similar features. Like EDCs, PFCs are nonprofit corporations that have a corporate structure. See TEX. LOC. GOV'T CODE §§ 303.002, 303.024, 303.035, 303.036, 303.041, 303.042. Additionally, the Public Facility Corporation Act prohibits a political subdivision that creates a PFC from "delegat[ing] to [the PFC] the power of taxation or eminent domain, a police power, or an equivalent sovereign power of this state or the sponsor." Id. § 303.041. Although the Act does not expressly state PFCs are not political subdivisions, the Office of the Attorney General, in discussing the tax liability of property owned by a PFC, has opined that "[d]espite the declared public character of a PFC, a PFC is neither a political subdivision of the state nor other governmental entity," explaining the Act "does not clothe a PFC with governmental powers." Tex. Att'y Gen. LO-98-028 (1998). We agree with the Attorney General that a PFC is not a political subdivision. See id.
Although a PFC's sponsor exerts a high degree of control over a PFC's existence, its activities, and whether it issues bonds, we conclude that PFCs, like EDCs, "are, in essence, nonprofit corporations that undertake discrete projects for the benefit of their [sponsors]." See Rosenberg Dev. Corp. , 526 S.W.3d at 704. Accordingly, considering the nature and purposes of governmental immunity and the *607 nature of PFCs, we conclude that PFCs, like EDCs, are not distinct governmental entities entitled to governmental immunity. See ids="12408475" index="53" url="https://cite.case.law/sw3d/526/693/#p698">id. at 706 ; Leon Valley , 422 S.W.3d at 42.
Woodhill is Not Entitled to Derivative Immunity as an Agent of SAHA
Woodhill claims it is entitled to governmental immunity as a "governmental affiliate[ ] and/or agent[ ]" of SAHA. Thus, we will now examine whether Woodhill is entitled to derivative governmental immunity as an agent of SAHA.
An agent of a governmental entity may be entitled to derivative governmental immunity "if it can demonstrate that 'its actions were actions of the [governmental entity], executed subject to the control of [the governmental entity].' " Lenoir , 491 S.W.3d at 83 (quoting Brown & Gay , 461 S.W.3d at 124 ). To be entitled to derivative immunity, a defendant must show "the complained-of conduct ... was effectively attributed to the government"; to wit, the defendant acted "as the government without discretion." Brown & Gay , 461 S.W.3d at 125 ; Lenoir , 491 S.W.3d at 86 (emphasis in original). Thus, in determining whether Woodhill is entitled to immunity as an agent of SAHA, we consider whether Woodhill "was acting as the government, not for the government, in addition to considering protection of the public fisc." Nettles v. GTECH Corp. , No. 05-15-01559-CV, 2017 WL 3097627, at *8 (Tex. App.-Dallas July 21, 2017, pet. filed) (mem. op.) (emphasis in original) (internal quotation omitted) (holding claims against independent contractor were barred by immunity where plaintiff's claims arose from decisions made by the state lottery agency, not the contractor).
In this case, Sarro's negligence claim against Woodhill is that Woodhill, as the owner of Woodhill Apartments, "allowed or failed to prevent the DOG from freely wandering on the PROPERTY" and "failed to have any type of security or protection from the DOG in the event of any attack or injury caused by the DOG." Thus, the complained-of conduct relates to Woodhill's alleged decision to allow the dog to be on the property and the alleged lack of security measures in place to prevent an attack by the dog. Although the legislature allows PFCs such as Woodhill to "acquire, construct, rehabilitate, renovate, repair, equip, furnish, or place in service public facilities" such as housing projects, Woodhill has presented no evidence that it acted without discretion and at the direction of SAHA regarding the dog's presence on the property or any security systems or procedures in place to protect against dog attacks. See TEX. LOC. GOV'T CODE §§ 303.021, 392.066. Thus, Woodhill has presented no evidence that it "acted as [SAHA] without discretion or diversion," as opposed to acting for SAHA. See Lenoir , 491 S.W.3d at 86 (concluding a medical clinic established by a state university was not entitled to derivative governmental immunity where the complained-of actions were discretionary). Moreover, Woodhill has presented no argument or evidence that the policy rationale behind governmental immunity justifies extending immunity to Woodhill in this case. See ids="6791716" index="61" url="https://cite.case.law/sw3d/491/68/#p77">id. at 87. Accordingly, because Woodhill did not meet its burden to establish that it acted without discretion and at the direction of SAHA, we conclude Woodhill is not entitled to derivative immunity as an agent of SAHA. See id. at 87-88.
CONCLUSION
For the foregoing reasons, we dismiss this appeal for lack of jurisdiction as it relates to Orion, and affirm the trial court's judgment as it relates to Woodhill.

It is unclear from the record whether Orion was hired by Woodhill or SAHA.

"When an entity's organic statute provides that the entity may 'sue and be sued,' the phrase in and of itself does not mean that immunity to suit is waived." Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp. , 283 S.W.3d 838, 843 (Tex. 2009).