

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00029-CV

———————————————

AVENTINE TARRANT PARKWAY APARTMENTS, LP, Appellant

V.

STEPHANIE ETLING, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-329882-21

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Aventine Tarrant Parkway Apartments, LP (Aventine LP) attempts to appeal from the trial court's interlocutory order denying its plea to the jurisdiction in a premises-liability case brought against it by Appellee Stephanie Etling. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). In its sole issue, Aventine LP argues that the trial court erred by denying its plea to the jurisdiction. In response, Etling argues, among other things, that we should dismiss Aventine LP's appeal for lack of jurisdiction because it is not a "governmental unit" authorized to file an interlocutory appeal of a trial court's denial of a plea to the jurisdiction. *See id.* Because we agree with Etling that Aventine LP is not a governmental unit authorized to file an interlocutory appeal of the trial court's denial of the plea to the jurisdiction, we will dismiss the appeal for want of jurisdiction.

## II. BACKGROUND

As alleged in Etling's live petition, in November 2019, she visited her grandmother at an apartment complex in Keller. While she was walking her grandmother's dog outside at the complex, Etling stepped on a metal grate. Etling alleged that the grate broke when she stepped on it, causing her bodily injuries. Etling later filed a premises-liability claim against Aventine LP, alleging that it was the "owner or property manager responsible for maintaining the walkways" at the

apartment complex and that it "knew or reasonably should have known of the . . . dangerous condition on said premises."

Aventine LP answered the lawsuit, and it later filed a plea to the jurisdiction. In its plea, Aventine LP argued that it was "entitled to assert governmental immunity and/or derivative governmental immunity" and that immunity had not been waived. An affidavit from Mary-Margaret Lemons was attached to Aventine LP's plea to the jurisdiction. In her affidavit, Lemons stated that she was the President of Housing Authority of the City of Fort Worth, Texas d/b/a Fort Worth Housing Solutions (the Housing Authority), which she described as "the public housing authority for the City of Fort Worth, Texas." Lemons explained that the Housing Authority owned the plot of land on which the subject apartment complex was located. According to Lemons, the Housing Authority leased that land to Aventine LP for the operation of a rental project composed of two hundred forty apartment units.

In her affidavit, Lemons stated that Aventine LP "is a Texas limited partnership that owns the Aventine Apartments where [Etling] allegedly fell" and that Aventine LP's "sole purpose is to hold title to a single asset, the Aventine Apartments, for the benefit of [the Housing Authority] and the low to moderate income residents it serves." She said that Aventine LP does not have any employees, is "entirely controlled" by the Housing Authority, and "merely serves ministerial functions, without discretion, for [the Housing Authority]." Lemons averred that Aventine LP is "wholly owned by Aventine 240, LLC and Fort Worth Affordability,

3

Inc." She went on to state that Aventine 240, LLC and Fort Worth Affordability, Inc. are "wholly owned and entirely controlled" by the Housing Authority, through the Housing Authority's employees. According to Lemons, Etling's lawsuit "implicates not only [Aventine LP's] assets, but potentially the assets of [the Housing Authority] as well, since [Aventine LP] is wholly owned by [the Housing Authority] by and through [the aforementioned] affiliated entities." Lemons also stated that the apartment complex was managed by Orion Real Estate Services Texas LLC.

The subject lease (the Lease) between the Housing Authority and Aventine LP concerning the land where the apartment complex was situated was attached to Aventine LP's plea to the jurisdiction. The Lease established the parties' respective rights and obligations concerning the land, with the Housing Authority described as the "Landlord" under the Lease and Aventine LP described as the "Tenant." On behalf of the Housing Authority, the Lease was signed by Barbara Holston, in her capacity as the "President and CEO" of the Housing Authority.[1] On behalf of Aventine LP, the Lease was also signed by Holston, under the following signature block:

---

[1]The Lease was signed by Holston in 2011. In her affidavit, Lemons stated that she became President of the Housing Authority in 2017.

TENANT:

AVENTINE TARRANT PARKWAY APARTMENTS,
L.P., a Texas limited partnership

By:  Aventine 240 LLC, a Texas limited liability
     company, its sole general partner

     By:  Trinity River Public Facility Corporation,
          a Texas nonprofit corporation, its sole
          member

          By:  *Barbara Holston*
               Barbara Holston, Vice President

Etling responded to Aventine LP's plea to the jurisdiction. In her response, Etling argued that Lemons was an interested witness and that her affidavit was "not clear, positive, direct, credible, [and] free from contradiction." She also maintained that Aventine LP could not "step[] into the shoes" of the Housing Authority. Indeed, Etling pointed out that Aventine LP had moved to designate the Housing Authority as a responsible third party in the lawsuit.[2]

Following a hearing, the trial court signed an order denying Aventine LP's plea to the jurisdiction. This interlocutory appeal followed.

---

[2]A copy of Aventine LP's motion for leave to designate certain entities as responsible third parties was attached to Etling's response to the plea to the jurisdiction. In that motion, Aventine LP requested leave to designate Orion Real Estate Services Texas, LLC, Orion Real Estate Group, and the Housing Authority as responsible third parties.

### III. DISCUSSION

We begin our analysis by addressing Etling's argument that we do not have appellate jurisdiction over Aventine LP's appeal.[3] *See State v. Ninety Thousand Two Hundred Thirty-Five Dollars and No Cents in United States Currency ($90,235)*, 390 S.W.3d 289, 291 (Tex. 2013) (stating that "we may not address the merits of a case absent jurisdiction").

### A. Standard of Review and Applicable Law

Whether we have jurisdiction over an appeal is a legal question that is reviewed de novo. *Eckerd Youth Alternatives, Inc.*, 2022 WL 2176523, at *2 (citing *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007)). If the record does not affirmatively reflect that we have appellate jurisdiction, we must dismiss the appeal. *Id.* (citing *IFS Sec. Grp., Inc. v. Am. Equity Ins. Co.*, 175 S.W.3d 560, 562 (Tex. App.—Dallas 2005, no pet.)).

As a general rule, an appeal may be taken only from a final judgment. *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 614 (Tex. 2023). Certain statutes, however, authorize interlocutory appeals over particular kinds of trial court orders. *Id.* Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code authorizes an interlocutory appeal from a trial court order that "grants or denies a plea

---

[3]Even if Etling had not raised the issue, we are obligated to review sua sponte issues affecting our jurisdiction. *Eckerd Youth Alternatives, Inc. v. Pytel*, No. 02-21-00332-CV, 2022 WL 2176523, at *2 (Tex. App.—Fort Worth June 16, 2022, no pet.) (mem. op.) (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004)).

to the jurisdiction by a governmental unit as that term is defined in Section 101.001." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).  Pursuant to Section 101.001(3), the term "[g]overnmental unit" means,

> (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
>
> (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
>
> (C) an emergency service organization; and
>
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3).

To qualify as a governmental unit under Section 101.001(3)(D), an entity must: (1) be an "institution, agency, or organ of government" and (2) derive its "status and authority" from the Texas Constitution or "from laws passed by the legislature."  *Id.* § 101.001(3)(D); *see CPS Energy*, 671 S.W.3d at 614.  "Under the first prong, the phrase 'institution, agency, or organ of government' has a broad meaning, with the phrase 'organ of government' encompassing 'an entity that operates as a part of a larger governmental system.'"  *Eckerd Youth Alternatives, Inc.*, 2022 WL 2176523, at *3 (citing

*Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 910 (Tex. 2017)). "To satisfy the second prong, 'the entity asserting immunity from suit must have a legislative or constitutional source from which it derived its status and authority.'" *Id.* (quoting *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 77 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (op. on reh'g)).

Notably, "[w]hether an entity is entitled to an interlocutory appeal and whether an entity has sovereign immunity are separate questions with separate analytical frameworks." *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 748 (Tex. 2019); *see also Univ. of the Incarnate Word*, 518 S.W.3d at 911 ("To determine whether an entity is immune, courts should rely not on the Tort Claims Act's definition of governmental unit, as we have here [when deciding the issue of appellate jurisdiction under Section 51.014(a)(8)], but on the 'nature and purposes' of sovereign immunity."). Accordingly, appellate courts routinely determine their own appellate jurisdiction before addressing issues of immunity. *See, e.g., Rosenberg Dev. Corp.*, 571 S.W.3d at 747–48 (determining appellate jurisdiction "[a]s a preliminary matter" before turning to issue of immunity); *Univ. of the Incarnate Word*, 518 S.W.3d at 911 (deciding issue of appellate jurisdiction and remanding issue of immunity); *152 Lakewest Cmty., LP v. Ameristar Apartment Servs., L.P.*, No. 05-20-00483-CV, 2021 WL 5710553, at *2–3 (Tex. App.—Dallas Dec. 2, 2021, no pet.) (mem. op.) (addressing its appellate jurisdiction and holding that it possessed jurisdiction over one appellant but not the other before addressing immunity of appellant over whom it

did have jurisdiction); *Orion Real Est. v. Sarro*, 559 S.W.3d 599, 602–04 (Tex. App.—San Antonio 2018, no pet.) (similar).

## B. Analysis

At the outset of this appeal, we sent a letter to the parties questioning our jurisdiction, and Aventine LP filed a brief in support of appellate jurisdiction. In that brief, Aventine LP pointed to two cases—*TRST Corpus, Inc. v. Financial Center, Inc.*, 9 S.W.3d 316 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (op. on reh'g) and *Lincoln Property Co. v. Herrera*, No. 13-23-00276-CV, 2025 WL 339036 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2025, no pet.) (mem. op.)—to support its argument that we have jurisdiction because it is a governmental entity pursuant to Section 101.001(3)(D).[4] In response, Etling relied primarily on two cases—*TRST Corpus, Inc.* (one of the cases cited by Aventine LP) and *Orion Real Estate*—to support its contention that we do not have jurisdiction because Aventine LP is not a governmental entity pursuant to Section 101.001(3)(D). We will discuss these three cases, along with a fourth we have found—*152 Lakewest Community, LP*—in turn.

In *TRST Corpus, Inc.*, a plaintiff filed a lawsuit against the Teacher Retirement System of Texas (TRS), which is a state agency, and it also filed claims against TRST Corpus, Inc. (TRST), a "title-holding subsidiary corporation" of TRS. 9 S.W.3d

---

[4]Aventine LP filed a reply brief in which it addressed Etling's argument that we lack appellate jurisdiction. In that reply brief, Aventine LP also relied on *TRST Corpus, Inc.* and *Lincoln Property Co.*

at 319. Both TRS and TRST filed pleas to the jurisdiction; the trial court granted TRS's plea, but it denied TRST's plea. *Id.* at 320. TRST filed an interlocutory appeal, and the plaintiff argued that the court of appeals lacked jurisdiction because TRST was not a governmental unit under Section 101.001. *Id.* In analyzing that issue, the Fourteenth Court of Appeals noted that TRS derived its authority from Article 16, Section 67 of the Texas Constitution. *Id.* at 321; *see* Tex. Const. art. XVI, § 67. That provision of the Texas Constitution provides that the legislature "may enact general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers," and it states that "[t]he assets of a system are held in trust for the benefit of members and may not be diverted." Tex. Const. art. XVI, § 67(a)(1). It further provides that "[e]ach statewide benefit system must have a board of trustees to administer the system and to invest the funds of the system in such securities as the board may consider prudent investments." Tex. Const. art. XVI, § 67(a)(3).

The court of appeals noted that the bylaws adopted by the TRS Board of Trustees provided TRS with the authority to maintain title-holding subsidiaries of property or other interests in TRS's real estate investment portfolio. *TRST Corpus, Inc.*, 9 S.W.3d at 321. The court stated that the record indicated that TRS had formed TRST as a "title-holding subsidiary corporation," that it was the shole shareholder of TRST's stock, and that "TRST's sole purpose [was] to hold title to a multi-million-dollar asset for the benefit of the TRS members." *Id.* Under those circumstances, the

court of appeals held that TRST was entitled to bring its interlocutory appeal of the trial court's denial of its plea to the jurisdiction. *Id.* Only after the court of appeals determined its jurisdiction did it move on to analyze whether TRST was entitled to governmental immunity. *See id.* at 321–24.

In *Lincoln Property Co.*, an estate filed a premises-liability suit against a housing authority, a limited partnership, and a company after the decedent was injured at "an apartment complex dedicated to public housing." 2025 WL 339036, at *1. The three defendants filed pleas to the jurisdiction, which were denied by the trial court. *Id.* at *1, *3. On appeal, the defendants argued that the trial court erred by denying their pleas because they were each entitled to governmental immunity. *Id.* at *4. The housing authority argued that it was entitled to immunity under Section 392.006 of the Texas Local Government Code; the limited partnership maintained that it was entitled to immunity because it was a "title-holding subsidiary entity whose sole purpose [was] to hold title to assets for the benefit of" the housing authority; and the company contended that it was entitled to derivative immunity because it had no discretion to act with respect to the complained-of premises defect. *Id.* at *5. Notably, the Corpus Christi–Edinburg Court of Appeals did not address the issue of whether it had appellate jurisdiction over the case, nor did it address whether the defendants were governmental units under Section 101.001(3)(D). Rather, the court's analysis focused on the issue of whether the defendants were entitled to governmental immunity. *See id.* at *4–5.

11

In *Orion Real Estate*, a young boy was bitten by a dog at an apartment complex. 559 S.W.3d at 601. The boy's father sued a housing authority and a public facility corporation that owned the complex, Orion who managed the complex, and a resident of the complex who was caring for the dog. *Id.* The trial court later granted a motion to dismiss filed by the housing authority, but it denied a plea to the jurisdiction filed by the public facility corporation and Orion. *Id.* at 602. The public facility corporation and Orion filed an interlocutory appeal. *Id.*

On appeal, the San Antonio Court of Appeals considered whether it had appellate jurisdiction over the case, analyzing whether the public facility corporation and Orion were governmental units under Section 101.001(3)(D). *Id.* at 602–03. The court noted that the public facility corporation was owned and operated by the housing authority, which was a governmental unit. *Id.* at 603. The court stated that Sections 303.021 and 392.066 of the Texas Local Government Code specifically allow a housing authority to create a nonprofit public facility corporation for certain purposes. *Id.* (citing Tex. Loc. Gov't Code Ann. §§ 303.021, 392.066). By virtue of that statutory authority, the San Antonio Court of Appeals held that the public facility corporation was "an 'institution, agency, or organ' of government whose 'status and authority' are derived from laws passed by the legislature." *Id.* Accordingly, the court held that it had jurisdiction over the interlocutory appeal as to the public facility corporation. *Id.*

12

Turning to Orion, the court stated that "Orion is a private company hired as an independent contractor to manage [the apartment complex]." *Id.* The court noted that Orion did "not point to any constitutional or statutory provision from which it derive[d] its status and authority," and the court further stated that it was not aware of any constitutional or statutory provision conferring such authority on Orion. *Id.* Accordingly, the court held that Orion was not a governmental unit under Section 101.001(3)(D) and that the court therefore did not have jurisdiction over the interlocutory appeal as it related to Orion. *Id.* Only after determining its own jurisdiction over the appellants did the court of appeals begin to analyze whether the public facility corporation—the only appellant it had jurisdiction over—was entitled to governmental immunity or derivative immunity. *See id.* at 603–07.

In *152 Lakewest Community, LP*, a plaintiff sued a housing authority, a public facility corporation, and a limited partnership to recover money allegedly owed to it for performing repair work on some townhomes. 2021 WL 5710553, at *1. The defendants each filed pleas to the jurisdiction. *Id.* The trial court granted the housing authority's plea, but it denied the pleas filed by the public facility corporation and the limited partnership. *Id.* On appeal, the Dallas Court of Appeals considered whether the public facility corporation and the limited partnership were governmental units under Section 101.001(3)(D). *Id.* at *2. Pointing to *Orion Real Estate*, the court held that the public facility corporation was a governmental unit under Section 101.001(3)(D) because statutes specifically allow housing authorities to create

13

nonprofit public facility corporations for certain purposes. *Id.*; *see* Tex. Loc. Gov't Code Ann. §§ 303.021, 392.066; *Orion Real Est.*, 559 S.W.3d at 603.

Turning to the limited partnership, the court noted that the public facility corporation served as its general partner. *152 Lakewest Cmty., LP*, 2021 WL 5710553, at *3. The court stated that the limited partnership "cannot be considered a public facility corporation" because it was not a corporation. *Id.* And while the housing authority testified that it had formed the limited partnership to act as the operator and manager of the townhomes, the court held that "[a]bsent statutory authority not present here, an entity hired to manage such a facility is not a governmental unit for purposes of [appellate] jurisdiction." *Id.* Accordingly, the court dismissed the appeal for lack of jurisdiction as to the limited partnership. *Id.* After determining its jurisdiction over the appellants, the court of appeals turned to the issue of whether the public facility corporation—the only appellant the court had jurisdiction over— was entitled to governmental immunity or derivative immunity. *Id.* at *3–5.

Here, the only defendant below was Aventine LP; Etling did not file suit against the Housing Authority; Orion; Aventine 240, LLC; Fort Worth Affordability, Inc.; or Trinity River Public Facility Corporation.[5] Thus, our jurisdiction hinges on

---

[5]After we sent our letter to the parties questioning our jurisdiction, Aventine LP filed an amended notice of appeal in which it was joined by the Housing Authority. The Housing Authority, however, was not a party below, and it has no standing to bring an appeal. *See Pandozy v. City of Dallas*, No. 05-09-00587-CV, 2010 WL 2927469, at *1 (Tex. App.—Dallas July 28, 2010, pet. denied) (mem. op.) ("Because Pandozy was not a party below, he has no standing to bring this appeal.");

whether Aventine LP—not any other entity—is a governmental unit under Section 101.001(3)(D). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8), 101.001(3)(D); *see also Medlin v. King*, 705 S.W.3d 267, 283 (Tex. App.—El Paso 2024, pet. denied) ("Generally, only parties of record have standing to appeal the trial court's judgment.").

As noted above, under the second prong of Section 101.001(3)(D), to qualify as a governmental unit, an entity must derive its status and authority from the Texas Constitution or from laws passed by the legislature. Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D); *see CPS Energy*, 671 S.W.3d at 614. Here, Aventine LP does not point to any provision in the Texas Constitution from which it derives its status and authority. The only statutory provision cited by Aventine LP is Section 392.006 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 392.006. That provision provides, in pertinent part: "For all purposes, including the application of the Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies Code), a housing authority is a unit of government and the functions of a housing authority are essential governmental functions and not proprietary functions." *Id.* That statute, however, says nothing about limited partnerships. *See id.* And we have found no

---

*Tri-State Salvage Co. v. City of El Paso*, No. 08-08-00250-CV, 2009 WL 641300, at *1 (Tex. App.—El Paso Mar. 12, 2009, no pet.) (mem. op.) ("The judgment was against Tri-State Salvage not McIntosh. We find that because McIntosh was not a party to the suit below, he does not have standing to bring this appeal."). In any event, when Aventine LP filed its brief after the amended notice of appeal, it listed only itself as an appellant.

statute or provision in the Texas Constitution giving status and authority to a limited partnership that is as tangentially related to a housing authority as Aventine LP is to the Housing Authority in this case.[6]

The circumstances in this case closely resemble those in *152 Lakewest Community, LP* and *Orion Real Estate*, where the respective courts of appeals held that they did not have jurisdiction over certain parties because those parties could not point to any statute or provision in the Texas Constitution from which their status and authority were derived. *See 152 Lakewest Cmty., LP*, 2021 WL 5710553, at *3; *Orion Real Est.*, 559 S.W.3d at 603.[7]

The circumstances here are distinguishable from those in *TRST Corpus, Inc.*, because in that case, there was evidence that TRS's authority was derived from the Texas Constitution. *See* 9 S.W.3d at 321. The subject constitutional provision

---

[6]According to Lemons's affidavit, that relationship appears to be that Aventine LP is a limited partnership wholly owned by Aventine 240, LLC and Fort Worth Affordability, Inc., two entities that are wholly owned by the Housing Authority. But according to the Lease, that relationship appears to be that Aventine LP is a limited partnership whose sole general partner is Aventine 240 LLC, whose sole member is Trinity River Public Facility Corporation.

[7]Aventine LP discussed *Orion Real Estate* in its reply brief. Aventine LP emphasized that the court of appeals in that case analyzed the issue of whether the defendant was entitled to governmental immunity in its own right before turning to the issue of whether the defendant shared governmental immunity with the housing authority. But Aventine LP fails to mention that before the court of appeals addressed the issue of immunity, the court first addressed whether it had appellate jurisdiction. *See Orion Real Est.*, 559 S.W.3d at 602–03. We too follow that same framework, addressing our own jurisdiction first.

16

specifically provided that the legislature could enact laws establishing systems and programs of retirement for public employees and officers and that the assets of the system were to be held in trust for the benefit of the members and could not be diverted. Tex. Const. art. XVI, § 67. The bylaws of the TRS Board of Trustees—a board that was specifically contemplated by the Texas Constitution, *see* Tex. Const. art. XVI, § 67—provided TRS with the authority to maintain title-holding subsidiaries of its property, like TRST. *TRST Corpus, Inc.*, 9 S.W.3d at 321. There is no similar provision or evidence here.

*Lincoln Property Co.* is distinguishable because, as noted above, the Corpus Christi–Edinburg Court of Appeals did not address the issue of whether it had appellate jurisdiction over the case, nor did it address whether the defendants were governmental units under Section 101.001(3)(D). *See generally Lincoln Prop. Co.*, 2025 WL 339036. The analytical framework used by the court of appeals in *Lincoln Property Co.*—to assess whether each defendant was entitled to governmental immunity—is different from our analysis here—where we are assessing whether Aventine LP is a governmental unit under Section 101.001(3)(D) for purposes of establishing our appellate jurisdiction.[8] *See Rosenberg Dev. Corp.*, 571 S.W.3d at 748; *Univ. of the Incarnate Word*, 518 S.W.3d at 911.

---

[8]In its reply brief, Aventine LP seems to conflate the issue of whether it is entitled to derivative governmental immunity with the issue of whether we have appellate jurisdiction over this interlocutory appeal. While Aventine LP's reply brief is rife with arguments pertaining to derivative governmental immunity, it fails to

17

Accordingly, without any constitutional or statutory provision conferring status and authority on Aventine LP, we conclude that Aventine LP does not qualify as a governmental unit under Section 101.001(3)(D). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D); *152 Lakewest Cmty., LP*, 2021 WL 5710553, at *3; *Orion Real Est.*, 559 S.W.3d at 603. And because we have determined that Aventine LP does not qualify as a governmental unit under Section 101.001(3)(D), we do not address whether Aventine LP is entitled to derivative immunity. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 747–48; *Univ. of the Incarnate Word*, 518 S.W.3d at 911; *152 Lakewest Cmty., LP*, 2021 WL 5710553, at *2–3; *Orion Real Est.*, 559 S.W.3d at 602–04; *see also Ninety Thousand Two Hundred Thirty-Five Dollars and No Cents in United States Currency ($90,235)*, 390 S.W.3d at 291 (stating that "we may not address the merits of a case absent jurisdiction").

## IV. CONCLUSION

Because Aventine LP does not qualify as a governmental unit under Section 101.001(3)(D), the trial court's order denying Aventine LP's plea to the jurisdiction is not an appealable order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). We thus lack jurisdiction over this appeal, and we dismiss it for want of jurisdiction. *See* Tex. R. App. P. 42.3(a), 43.2(f).

mention or discuss Section 51.014 (the statute authorizing appeals of interlocutory orders) or Section 101.001(3) (the statute defining "governmental unit" that is referenced in Section 51.014(a)(8)). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8), 101.001(3).

/s/ Dana Womack

Dana Womack
Justice

Delivered:  October 9, 2025