

# NUMBER 13-25-00218-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**TEXAS CORDIA CONSTRUCTION, LLC,**                                    **Appellant,**

**v.**

**DEANIRA CANTU, PABLO RUBALCABA, DOMINGO PENA JR., JANET PENA, MONICA CAVAZOS, JUANITA "JANIE" AND ROMAN RODRIGUEZ, FELICITAS AND JOSE GARZA, NORMA SUAREZ, CASSANDRA AYALA, GERARDITA GARZA, BENITO HUERTA, MAGDALENA RODRIGUEZ, EVAGELINA AND ROGELIO MELCHOR, LIDIA HERNANDEZ, ALFREDO AND ESPERANZA SALINAS, AND JUAN LOPEZ,**                                    **Appellees.**

---

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

---

# MEMORANDUM OPINION

## Before Justices Silva, Cron, and Fonseca
## Memorandum Opinion by Justice Silva

Appellant Texas Cordia Construction, LLC (TCC) attempts to appeal the trial court's order denying its plea to the jurisdiction seeking to dismiss claims made by appellees Deanira Cantu, Pablo Rubalcaba, Domingo Pena Jr., Janet Pena, Monica Cavazos, Juanita "Janie" and Roman Rodriguez, Felicitas and Jose Garza, Norma Suarez, Cassandra Ayala, Gerardita Garza, Benito Huerta, Magdalena Rodriguez, Evangelina and Rogelio Melchor, Lidia Hernandez, Alfredo and Esperanza Salinas, and Juan Lopez. In one issue, TCC argues that the trial court erred when it denied its plea to the jurisdiction because TCC enjoys "derivative sovereign immunity." We dismiss the appeal for lack of jurisdiction.

## I.    BACKGROUND

On November 7, 2024, appellees filed their amended original petition against TCC and Melden & Hunt, Inc.[1] Appellees identified themselves as residents of the Lull subdivision in Edinburg and TCC as the general contractor that performed work for the City of Edinburg's (the City) "Lull Street Improvement Project, #2021-24" (the Project).[2] According to appellees, the Project included paving improvements and reconstruction of existing streets, plus curb and gutter installation on specific streets within the Lull

---

[1] Melden & Hunt, Inc. is not a party to this appeal.

[2] The amended petition identified Melden & Hunt, Inc. as "the business that contracted with the City or others to perform design and other work in connection with the Project."

2

subdivision. TCC's work on the Project also included "site grading, excavating subgrade, installation of utilities and storm drainage systems, street paving, curbing and other improvements." The appellees pleaded that TCC "performed its work on the Project without any regard for [appellees] or for its agreement with the City." Appellees claimed, among other things, that they sustained damages to their persons, homes, vehicles, and other property as a result of TCC's activities in attempting to complete the Project.[3] Appellees asserted negligence, gross negligence, breach of contract, subrogation, nuisance, and breach of warranty claims. Appellees requested, among other things, declaratory relief, actual damages, exemplary damages, pre- and post-judgment interest, court costs, and attorney's fees.

On February 3, 2025, TCC filed a plea to the jurisdiction asserting that appellees' claims against it should be dismissed because TCC was immune from suit under "derivative sovereign immunity." TCC asserted in its plea that appellees had sued it, "a government contractor, for actions that were directed and required by the City." In particular, TCC contended that the contract governing its work on the Project "expressly required [TCC] to demolish the streets, remove mailboxes, and other actions of which [appellees] now complain." As part of its plea, TCC attached several documents, including a copy of the construction contract between the City and TCC concerning the Project with numerous accompanying documents including the "Standard General Conditions of the Construction Contract"; emails between TCC and the City; an affidavit authored by Yara

---

[3] Appellees pleaded that TCC quit working on the Project before its completion and that the City entered into an "emergency agreement" with IOC Company, LLC and Artillery, LLC to complete or re-do a substantial amount of work that TCC "was supposed to have performed timely and properly."

M. Corbitt, TCC's chief executive officer; and the City's October 5, 2022 notice of contract termination sent to Corbitt.

The following day, TCC filed its original answer generally denying appellees' claims and asserting several affirmative defenses. On February 20, 2025, appellees filed a response to TCC's plea to the jurisdiction. In its response, appellees argued that

> Although the contract required [TCC] to demolish the streets, remove mailboxes, and other actions, the City did not instruct it to conduct itself with unreasonable delay in the execution of those duties, nor did it require [TCC] to carry out those tasks negligently, recklessly, and with conscious disregard to the Lull community's expectation of reasonable enjoyment of their property. [TCC] conflates the fact that it was assigned duties with the fact that it carelessly delivered same. In other words, the City did not ask [TCC] to demolish the streets in such a manner that it would unreasonably interfere with the [Lull] community's quiet enjoyment of its property. [TCC] attempts to escape liability by insisting that the City commanded it to act in a certain manner when all it did was tell it what to do—not how to do it. And, for that, [TCC] is exclusively liable.

In addition, appellees attached to their response a copy of the "Project Manual for the Lull Street Improvement Project." This manual included a "Scope of Work" section which stated:

> This Scope of Work and any accompanying drawings are intended as a guide to the Contractor in identifying the work to be accomplished in completing this project. This Scope of Work may not be all inclusive and the Contractor shall be responsible for providing all supervision, labor, materials, equipment, direction, and coordination necessary to perform and totally complete the work in conformance with the drawings and specifications. If an "or equal" substitution is made for any of the recommended items shown in the specifications or drawings, the Contractor shall be responsible for providing all the necessary physical modifications to fully accommodate the substitution at no change in contract price.

The manual also provided that "the Work sequence will be the responsibility of the Contractor using good construction practices" and that the Contractor for the project was

4

responsible for monitoring "quality control over suppliers, manufacturers, products, services, site conditions, and workmanship, to produce Work of specified quality."

On April 1, 2025, the trial court signed its order denying TCC's plea to the jurisdiction. On April 21, 2025, TCC filed its notice of interlocutory appeal pursuant to Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

## II.   APPELLATE JURISDICTION

Appellees argue that we lack jurisdiction over this interlocutory appeal because TCC is not a governmental unit. TCC responded to the appellees' assertion in its reply brief, as detailed below. On April 27, 2026, the Clerk of the Court notified TCC that upon further review of the documents before the Court, it appeared we lacked jurisdiction over the appeal. The Clerk also notified TCC that the appeal would be dismissed for want of jurisdiction if the defect was not cured within ten days from the date of the Court's directive. *See* TEX. R. APP. P. 42.3(a), (c). TCC timely filed a response reiterating the same arguments it made in its reply brief.

Generally, appellate courts have jurisdiction only over appeals from final judgments unless a statute authorizes an interlocutory appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *see also Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) ("[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties."). Section 51.014(a)(8) of the Texas Civil Practice and Remedies

5

Code provides that "[a] person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). Section 101.001 defines governmental unit as:

(A)    this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B)    a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

(C)    an emergency service organization; and

(D)    any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3).

In this case, TCC is attempting to appeal the trial court's order denying its plea to the jurisdiction. The order is not final because it does not dispose of every pending claim or party in the case, nor does it state that it finally disposes of every pending claim and party in the case. *See Lehmann*, 39 S.W.3d at 205. Accordingly, we must determine whether we have jurisdiction over this case as an interlocutory appeal. *See CMH Homes*, 340 S.W.3d at 447–48.

In its reply brief, TCC argued that it "did not need to prove that it is a 'governmental unit,'" that "[s]uch a requirement would defeat the 'derivative' nature of the doctrine[ of

6

sovereign immunity] TCC did invoke," and that "[d]enying immediate appellate review, when TCC was acting, in effect, as the City, is imprudent, because, again, there is no argument that the City is not a governmental unit." We disagree. The Texas Supreme Court has held that "whether an entity is entitled to an interlocutory appeal and whether an entity has sovereign immunity are separate questions with separate analytical frameworks." *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017); *see also Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 741 (Tex. 2019) ("As an extension of sovereign immunity, governmental immunity protects political subdivisions performing governmental functions as the state's agent"). Whether the City—a non-party to this appeal—is a governmental unit is not determinative whether we have jurisdiction over TCC's interlocutory appeal. *See id.*; TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). Rather, we must assess whether TCC itself is a governmental unit as the party attempting to invoke our interlocutory jurisdiction pursuant to Section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

Based on the appellate record before us, we conclude that TCC is not a governmental unit as defined by Section 101.001 and our interlocutory jurisdiction is not properly invoked. *See id.* § 101.001(3); *see also ASM Global, LLC v. Weaver*, 705 S.W.3d 355, 361–62 (Tex. App.—El Paso 2024, no pet.) (holding contractor that operated a city-owned water park was not a governmental unit under Section 101.001(3), and therefore, not entitled to interlocutory review under Section 51.014(a)(8)); *Orion Real Estate v. Sarro*, 559 S.W.3d 599, 603 (Tex. App.—San Antonio 2018, no pet.) (same for private company hired as an independent contractor to manage apartments developed by

7

housing authority); *152 Lakewest Cmty., LP v. Ameristar Apartment Servs., L.P.*, No. 05-20-00483-CV, 2021 WL 5710553, at *3 (Tex. App.—Dallas Dec. 2, 2021, no pet.) (mem. op.) (same for private company hired to carry out housing authority's functions); *AECOM USA, Inc. v. Mata*, No. 04-15-00773-CV, 2016 WL 5112222, at *2, *4 (Tex. App.—San Antonio Sept. 21, 2016, pet. denied) (mem. op.) (same for private contractor hired by a state agency). Therefore, we lack jurisdiction to consider TCC's interlocutory appeal under Section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

### III.    REQUEST FOR MANDAMUS RELIEF

For the first time in its reply brief, TCC requested we treat its appeal as a petition for writ of mandamus in the event this Court lacked jurisdiction to review its interlocutory appeal. Under certain circumstances, a court may treat an appeal as a petition for a writ of mandamus. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452–54 (Tex. 2011). This promotes judicial economy because requiring the appellant to file a separate petition for writ of mandamus would "unnecessarily waste the parties' time and further judicial resources." *Id.* at 453; *see Icon Benefit Adm'rs II, L.P. v. Mullin*, 405 S.W.3d 257, 263 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied]). "In order to obtain mandamus review in such a situation, the appellant must specifically request that its appeal be treated as a mandamus petition." *21st Century Centennial Ins. Co. v. Ramirez*, 675 S.W.3d 356, 362 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (combined app. & orig. proceeding [mand. denied]). After fully reviewing the appeal, TCC's express request to treat its appeal as a petition for writ of mandamus, and the appellees' responsive brief, we conclude that the interests of justice and judicial economy militate in favor of granting

8

TCC's request. *See CMH Homes*, 340 S.W.3d at 452–54; *Ramirez*, 675 S.W.3d at 362. Accordingly, we grant TCC's request to treat its appeal as a petition for writ of mandamus.

"Mandamus will lie only to correct a clear abuse of discretion." *In re Salazar*, 142 S.W.3d 412, 413 (Tex. App.—El Paso 2004, no pet.) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)). "Moreover, there must be no other adequate remedy at law." *Id.*

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "[S]overeign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued[,] unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). If, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the factfinder. *Miranda*, 133 S.W.3d at 227–28.

TCC argues that the trial court erred in denying its plea to the jurisdiction because it enjoys derivative sovereign immunity. The Texas Supreme Court has not adopted the derivative-immunity doctrine or standards to use when determining the scope of that

9

doctrine. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 733 (Tex. 2020). The circumstances under which derivate immunity exists are "ill-defined," but the Court has held that "the absence of any governmental control over a private contractor's work affirmatively precludes it." *Rosenberg Dev. Corp.*, 571 S.W.3d at 751–52 (citing *Brown & Gay Eng'g v. Olivares*, 461 S.W.3d 117, 126 (Tex. 2015)); *see also Nettles*, 606 S.W.3d at 733–37 (declining to adopt derivate immunity doctrine but noting that even if doctrine was recognized, private contractor would not be entitled to it because contractor retained discretion and governmental unit did not control contractor's work). In this case, the parties presented conflicting evidence on this point. In particular, we note that the contract document that TCC attached to its plea to the jurisdiction included a section entitled "Standard General Conditions of the Construction Contract." That section included the following provisions:

7.01 *Contractor's Means and Methods of Construction*

 A. [TCC] shall be solely responsible for the means, methods, techniques, sequences, and procedures of construction.

 . . .

7.02 *Supervision and Superintendence*

 A. [TCC] shall supervise, [i]nspect, and direct the [w]ork competently and efficiently, devoting such attention thereto and applying such skill and expertise as may be necessary to perform the [w]ork in accordance. with the [c]ontract [d]ocuments.

 . . .

7.04 *Services, Materials, and Equipment*

 A. Unless otherwise specified in the [c]ontract [d]ocuments,

10

> Contractor shall provide and assume full responsibility for all services, materials, equipment, labor, transportation, construction equipment and machinery, tools, appliances, fuel, power, light, heat, telephone, water, sanitary facilities, temporary facilities, and all other facilities and incidentals necessary for the performance, testing, start up, and completion of the [w]ork, whether or not such items are specifically called for in the Contract Documents.

(emphasis in original). We conclude the above provisions, at the very least, raise a fact question concerning the absence of the City's control over TCC's work on the Project. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 751–52. Therefore, the trial court did not err in denying TCC's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28; *In re Salazar*, 142 S.W.3d at 413; *see also Midwestern Cattle Mktg., LLC v. Nw. Cattle Feeders, LLC*, No. 02-17-00274-CV, 2018 WL 1414834, at *6 (Tex. App.—Fort Worth Mar. 22, 2018, pet. denied) (mem. op.) (rejecting the appellant's alternative request for mandamus relief brought for the first time in its reply brief, but also concluding the appellant was not entitled to such relief when the trial court's complained-of decision was based on conflicting evidence). Accordingly, TCC is not entitled to mandamus relief.

## IV.   CONCLUSION

Having determined that TCC's appeal of the trial court's denial of its plea to the jurisdiction is not subject to an interlocutory appeal, we dismiss this appeal for lack of jurisdiction. *See* TEX. R. APP. P. 42.3(a). However, we have determined that TCC's appeal should be treated as a petition for writ of mandamus. The Court, having examined and fully considered the petition for writ of mandamus, the appellees' response, the record, and the applicable law, is of the opinion that TCC has not met its burden to obtain

11

mandamus relief as discussed herein. Accordingly, we deny the petition for writ of mandamus.

CLARISSA SILVA
Justice

Delivered and filed on the
4th day of June, 2026.